979 P.2d 1046

Gregory BARNETT, Petitioner/Cross–
Respondent–Appellant,

v.

STATE of Hawai'i, Respondent/Cross–
Petitioner–Appellee.

Nos. 19913, 21051.

Supreme Court of Hawai'i.

June 23, 1999.

Reconsideration Denied July 15, 1999.

Anthony L. Ranken, Wailuku, for petitioner/cross-respondent-appellant Gregory Barnett on the writ.

Aileen Y. Watanabe, Deputy Prosecuting Attorney, for respondent/cross-petitioner-appellee State of Hawai'i on the writ.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by RAMIL, J.

Petitioner / cross–respondent–appellant Gregory Barnett appealed the circuit court's April 24, 1996 order denying his Hawai'i Rules of Penal Procedure (HRPP) Rule 40 petition without a hearing. Barnett argued, *inter alia*, that the circuit court erred in denying his HRPP Rule 40 petition without a hearing because: (1) the plea agreement was ambiguous and unfulfillable; (2) the minimum term of imprisonment set by the Hawai'i Paroling Authority (HPA) was illegal; and (3) his counsel provided ineffective assistance of counsel.

We assigned Barnett's appeal to the Intermediate Court of Appeals (ICA). In *Barnett v. State*, Nos. 19913 and 21051 (Haw.Ct.App.

Mar. 9, 1999) (mem.op.),[1] the ICA vacated the circuit court's order denying Barnett's HRPP Rule 40 petition because Barnett was not aware that the plea agreement contemplated concurrent multiple life terms. We granted certiorari to review the ICA's opinion. For the reasons discussed below, we reverse the ICA's decision and affirm the circuit court's order denying Barnett's HRPP Rule 40 petition.

## I. BACKGROUND

On April 24, 1992, Barnett was indicted for a total of forty criminal charges in Cr. No. 92–0196 for:

> Two counts of Promoting Child Abuse in the First Degree, [in violation of] Hawai'i Revised Statutes (HRS) § 707–750(1) (Supp.1992).[2]

Twelve counts of Sexual Assault in the First Degree, HRS § 707–730(1)(b) (Supp. 1992),[3] against one victim and nine counts of Sexual Assault in the First Degree against a second victim.

Two counts of Attempted Sexual Assault in the First Degree, HRS §§ 705–500 (1985)[4] and 707–730(1)(b) (Supp.1992),[5] against one victim and two counts of Attempted Sexual Assault in the First Degree against a second victim.

Four counts of Sexual Assault in the Third Degree, HRS § 707–732(1)(b) (Supp. 1992),[6] against one victim and three counts of Sexual Assault in the Third Degree against a second victim and one count of Sexual Assault in the Third Degree against a third victim.

Three counts of Promoting Pornography for Minors, HRS § 712–1215(1)(a) (Supp. 1992),[7] against one victim and two counts of Promoting Pornography for Minors against a second victim.

---

1. In No. 19913, Barnett appealed the circuit court's April 24, 1996 order denying his HRPP petition. In No. 21051, Barnett appealed the circuit court's orders denying his motions for relief from judgment, for stay of proceedings, and for a reserved question to this court. Nos. 19913 and 21051 were consolidated on December 9, 1997 before briefs were submitted.

2. HRS § 707–750(1) provides:

> **Promoting child abuse in the first degree.** (1) A person commits the offense of promoting child abuse in the first degree if, knowing or having reason to know its character and content, the person produces, directs, or participates in the preparation of pornographic material or engages in a pornographic performance which employs, uses, or otherwise contains a minor engaging in or assisting others to engage in sexual conduct.

3. HRS § 707–730(1)(b) provides in relevant part:

> **Sexual assault in the first degree.** (1) A person commits the offense of sexual assault in the first degree if ... [t]he person knowingly subjects to sexual penetration another person who is less than fourteen years old; provided this paragraph shall not be construed to prohibit practitioners licensed under chapter 453, 455, or 460, from performing any act within their respective practices.

4. HRS § 705–500 provides:

> **Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if he:
> (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he believes them to be; or

> (b) Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime.
> (2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, he intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.
> (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

5. *See supra* note 3.

6. HRS § 707–732(1)(b) provides in relevant part:

> **Sexual assault in the third degree.** (1) A person commits the offense of sexual assault in the third degree if ... [t]he person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]

7. HRS 712–1215(1)(a) provides in relevant part:

> **Promoting pornography for minors.** (1) A person commits the offense of promoting pornography for minors if ... [k]nowing its character and content, the person disseminates to a minor material which is pornographic for minors[.]

*Barnett,* mem. op. at 4. On May 18, 1992, Barnett was indicted in Cr. No. 92–0259 for one count of sexual assault in the third degree, in violation of HRS § 707–732(1)(b). Given that Barnett was charged with forty counts of sexual assault in Cr. No. 92–0196 and one count of sexual assault in Cr. No. 92–0259, Barnett faced a total of forty-one charges of sexual assault.

A. *Plea Negotiations and the Plea Agreement*

The prosecution made an initial plea offer to Barnett in January 1994, proposing to dismiss twenty-five of the forty-one charges in exchange for Barnett's guilty plea to fourteen class A felonies and two class C felonies. The prosecution offered to seek a combination of concurrent and consecutive sentences on these charges that would result in a fifty-year indeterminate sentence.

Barnett rejected this plea offer and countered through his attorney by way of a letter dated August 1, 1994. The letter stated in relevant part:

I have reviewed your plea proposal previously submitted on January 4, 1994. I understand it is your opinion that Mr. Barnett faces up to 610 years of imprisonment or 27 life sentences with the possibility of parole in 140 years, if the judge grants extended terms and runs the sentences consecutive.... Based upon my discussions with Mr. Barnett, as well as my initial review of the discovery in this matter, I have been authorized to make the following plea proposal:

1. Mr. Barnett is prepared to enter a plea of guilty in Cr. No. 92–0196(3) and Cr. No. 92–0259(3), and stipulate to a single life term of imprisonment with the possibility of parole.

*According to my review of prior decisions of the Hawaii Paroling Authority, it is unlikely that Mr. Barnett will receive a term of less than 35 years as his minimum mandatory term.*

(Emphasis added.)

The prosecution responded to Barnett's counter-proposal as follows:

1. Mr. Barnett will enter a plea of "Guilty" in Cr. No. 92–0196(3) and Cr. No. 92–0259(3);

2. Mr. Barnett will stipulate to a single life term of imprisonment with the possibility of parole under Cr. No. 92–0196(3) for each class "A" felony charged (to run concurrent), pursuant to H.R.S. Sections 706–661(1) and 706–662(4)(a) and (b). All other charged offenses will carry their ordinary terms of imprisonment pursuant to H.R.S. Section 706–660 and will run concurrent to the single life term of imprisonment;

3. Mr. Barnett will be sentenced to a five year term of imprisonment under Cr. No. 92–0259(3) with that term to run concurrent to the single life term of imprisonment to be imposed under Cr. No. 92–0196(3); and

4. There are no other general or specific agreements as to sentencing.

(Emphases omitted.)

A letter dated August 8, 1994 from the prosecutor to Barnett's counsel was attached to Barnett's guilty plea form and stated in relevant part:

I have discussed the terms of the plea agreement set forth in your letter dated August 4, 1994, ... and have been authorized to enter into your proposed plea agreement. For your convenience, I have outlined the agreement in detail below.

. . . .

7. Mr. Barnett will stipulate to a single life term of imprisonment with the possibility of parole under Cr. No. 92–0196(3) for counts two, Nine, Twelve, Sixteen, Eighteen, Twenty–Five, Twenty–Eight, Thirty–One, Thirty–Four and Thirty–Nine (all class "A" felonies) while Counts One, Nineteen, Twenty–One and Thirty–Six (all Class "C" felonies) will carry the ordinary terms of imprisonment of an indeterminate sentence of five years, to run concurrent to the life term imposed for the class "A" felonies.

8. Mr. Barnett will be sentenced to a five year term of imprisonment under Cr. No. 92–0259(3) with that term to run concurrent to the single life term of imprisonment under Cr. No. 92–0196(3).

9. Prior to Defendant's entry of plea, the parties will hold a Rule 11 plea agreement conference with Judge Boyd P. Mossman to obtain the Court's consent to be bound by the above-stated sentencing agreement.

(Emphases omitted.)

At the August 12, 1994 change of plea hearing, the circuit court first reviewed Barnett's guilty plea form and then conducted the following colloquy with Barnett:

THE COURT: ... [Y]ou will be stipulating to a single life term of imprisonment with a possibility of parole under Criminal Number 92–0196 for Counts 2, 9, 12, 16, 18, 25, 28, 31, 34 and 39. These are all class A felonies. While counts 1, 19, 21 and 36, which are all class C felonies, will carry the ordinary terms of imprisonment of an indeterminate term of five years to run concurrent to the life term imposed for the class A felonies.

That you will be sentenced to five years for Criminal 92–0259, which term will run concurrent with a single life term in Criminal 92–0196. That pursuant to Rule 11 this plea agreement will be—the Court will be bound by this plea agreement. That— and that there are no other general or specific agreements as to sentencing and that a presentence report will be prepared.

Is that your understanding of the agreement between you and the State in this matter?

[BARNETT]: Yes, it is.

THE COURT: Okay. As I indicated, this is a Rule 11 agreement. So the Court is binding itself to the plea agreement between you and the State. This is not normally the case. In a normal sentencing the Court is not binding itself to any kind of agreement and the Court is not promising any kind of leniency, et cetera.

In this particular situation through the efforts of your attorney, as well as the agreement of the State, there is an agreement here, and as I have read it. Do you have any questions about the plea agreement?

[BARNETT]: No, I do not.

Barnett then signed the guilty plea form in open court.

After the guilty plea, Barnett submitted a presentence letter to the Adult Probation Division illustrating his alleged understanding that he would be sentenced to a single life term with the possibility of parole in Cr. No. 92–0196 and with all other sentences running concurrently. The letter stated in relevant part:

As my friends and family, I ask simply that you take the time to understand that a life sentence is a misnomer; it has very little to do with how much time I will actually spend in prison. Before agreeing to this offer I was fortunate to have not only the guidance of my own attorney, but also input from several other high-powered attorneys who advised that a single life sentence is better than a series of 10 or 20 year sentences to be served consecutively. A single life sentence consolidates and simplifies the entire sentencing scheme.

Most importantly, a life sentence does not represent spending the rest of my life in prison. Rather, a life sentence is an enhanced version of a 20 year sentence.

B. *Sentencing*

On November 30, 1994, the circuit court conducted Barnett's sentencing hearing. After confirming that it had "already agreed to the plea bargain[,]" the circuit court proceeded to sentence Barnett as follows:

THE COURT: ... [A]s we have already agreed to as regards Criminal 92–0196, it will be the judgment and sentence of this Court that you be sentenced in Counts 1, 19, 21, 36, and 40 to five years in imprisonment concurrent will all the other counts in these two cases. And on Counts 2, 9, 12, 16, 18, 25, 28, 31, 34 and 39, that you be ordered to serve extended imprisonment term of life imprisonment as a multiple offender. Court's finding pursuant to the stipulation of counsel, as well as yourself, that you do qualify for this extended term of imprisonment.

That these counts run concurrent with each other and with all the other counts in the two criminal cases.

That in Criminal 92–0259, that you be committed to five years to run concurrent with all the other counts.

The circuit court entered a judgment in both Cr. No. 92–0196 and Cr. No. 92–0259 on November 30, 1994. An amended judgment was entered in both cases on December 16, 1994. The amended judgment in Cr. No. 92–0196 stated, in relevant part, that Barnett was to be incarcerated to:

FIVE (5) YEARS in Counts 1, 19, 21, 36, 40; EXTENDED· IMPRISONMENT TERM OF LIFE AS A MULTIPLE OFFENDER WITH POSSIBILITY OF PAROLE in Counts 2, 9, 12, 16, 18, 25, 28, 31, 34 & 39.

Similarly, the amended judgment in Cr. No. 92–0259 sentenced Barnett to a term of incarceration for five years running concurrent to all other terms.

Pursuant to the circuit court's sentence, the HPA held a hearing on March 10, 1995 to determine Barnett's minimum term of imprisonment (the minimum term hearing). The mothers of two minor victims of Barnett's offenses made oral comments at the hearing. Although the prosecution attempted to present various photographs from the criminal case, Barnett's counsel objected to the presentation. As a result of the objection, the HPA did not view the photographs. After the hearing, the HPA fixed Barnett's minimum term of imprisonment at twenty-five (25) years.

### C. *Barnett's HRPP Rule 40 Petition*

On January 3, 1996, Barnett filed a HRPP Rule 40 petition, alleging that: (1) when entering his guilty plea, he did not realize he would receive ten life terms for all class A felonies rather than just one life term; (2) the plea agreement was ambiguous, illegal, and/or did not conform to statute; (3) the sentence was illegal because there was no hearing and no findings by the court to support the extended terms imposed; (4) his counsel was ineffective; (5) the prosecutor and the HPA committed misconduct at the minimum term hearing by their actions regarding the oral comments of the two victim witnesses and the photographic evidence proffered by the State; and (6) the HPA's setting of a twenty-five year minimum term on the life term imposed for each class A felony violated the due process clause and the eighth amendment to the United States Constitution.

In denying Barnett's Rule 40 Petition, the circuit court summarized Barnett's grounds for relief as follows: (1) extended sentencing (Barnett's claims regarding the plea agreement and sentence); (2) ineffective assistance of counsel; and (3) minimum term fixed by the Hawaii Paroling Authority (HPA) (prosecutorial and HPA misconduct). The circuit court concluded that all of Barnett's claims were patently frivolous and without a trace of support in the record or from other evidence. Additionally, the circuit court concluded that HRPP Rule 40 relief was not available to Barnett because he had waived the issues regarding extended sentencing and ineffective assistance of counsel. Thereafter, Barnett filed a timely notice appeal from the circuit court's denial of his HRPP Rule 40 motion without a hearing.

### D. *The ICA's Opinion*

On appeal, the ICA determined that the circuit court erred in deciding that "at all relevant times, [Barnett] had verbal and written notices of, and was aware that, as to the class A felonies, he would be sentenced to concurrent multiple extended terms pursuant to Chapter 706." *Id.*, slip op. at 13. In reaching this conclusion, the ICA reasoned that Barnett never agreed nor was he aware that he would be sentenced to concurrent multiple life terms for the class A felonies. On this basis, the ICA vacated the circuit court's order denying Barnett's HRPP Rule 40 petition without a hearing and remanded the case to the circuit court for further proceedings consistent with its opinion.

From the ICA's opinion, Barnett and the prosecution each filed a petition for writ of certiorari. In his petition for certiorari, Barnett argues that: (1) the ICA erred in failing to direct the circuit court to sentence him to ordinary, non-extended terms of imprisonment (*i.e.*, twenty-years for each count); and (2) the ICA incorrectly concluded that nothing in HRS § 706–669(7) (1993) prohibits the

HPA from allowing the parents of victims to make oral comments. By contrast, the prosecution argues in its petition for certiorari that the ICA erred in concluding that Barnett did not have notice and was not aware that he would be sentenced to concurrent multiple extended terms.

## II. *STANDARDS OF REVIEW*

### A. *Denial of HRPP Rule 40 Petition Without Evidentiary Hearing*

■ With regard to the denial of a HRPP Rule 40 petition without an evidentiary hearing, HRPP Rule 40(f) provides in relevant part:

> If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner. The court may also deny a hearing on a specific question of fact when a full and fair evidentiary hearing upon that question was held during the course of the proceedings which led to the judgment or custody which is the subject of the petition or at any later proceeding.

In addition, we have previously stated:

> As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim. To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the verdict, however, a petitioner's conclusions need not be regarded as true. Where examination of the record of the trial court proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing. *The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.*

*[State v.] Allen,* 7 Haw.App. [89,] 92–93, 744 P.2d [789,] 792–93 [ (1987) ] (emphasis added).

> [In this regard], the appellate court steps into the trial court's position, reviews the same trial record, and redecides the issue. Because the appellate court's determination of "whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court" is a question of law, the trial court's decision is reviewed *de novo. See United States v. Burrows,* 872 F.2d 915 (9th Cir. 1989) (denial of a post-conviction motion based on ineffective assistance of counsel without conducting an evidentiary hearing is reviewed *de novo* for a determination of whether the files and records of the case conclusively show that petitioner is entitled to no relief). Therefore, we hold that . . . the issue whether the trial court erred in denying a Rule 40 petition without a hearing based on no showing of a colorable claim is reviewed de novo; thus, the right/wrong standard of review is applicable.

*Dan v. State,* 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994).

### B. *Sentencing*

■ "The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed." *State v. Valera,* 74 Haw. 424, 439, 848 P.2d 376, 383, *reconsideration denied,* 74 Haw. 650, 853 P.2d 542 (1993).

*State v. Davia,* 87 Hawai'i 249, 253–54, 953 P.2d 1347, 1351–52 (1998).

### C. *Ineffective Assistance of Counsel (HRPP Rule 40 Petition)*

■ In reviewing an ineffective assistance of counsel claim, this court must determine whether the assistance, "[w]hen viewed as a whole, was . . . provided to the defendant within the range of competence demanded of attorneys in criminal cases[.]" *State v. Richie,* 88 Hawai'i 19, 39, 960 P.2d 1227, 1247

(1998) (citations and internal quotation marks omitted). In addition,

> [t]his court has also held that
>> the defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.
>
> *Id.* (quoting *State v. Silva*, 75 Haw. 419, 439–40, 864 P.2d 583, 593 (1993)). "Determining whether a defense is 'potentially meritorious' requires an evaluation of the possible, rather than the probable, effect of the defense on the decision maker.... Accordingly, no showing of 'actual' prejudice is required to prove ineffective assistance of counsel." *Dan v. State*, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994).

*State v. Fukusaku*, 85 Hawai'i 462, 479–80, 946 P.2d 32, 49–50 (1997) (ellipsis in original).

## III. *DISCUSSION*

### A. *The Plea Agreement & Sentencing*

In its memorandum opinion, the ICA agreed with Barnett's contention that the circuit court erred in determining that the sentence of concurrent multiple extended terms did not violate the plea agreement. As a result, Barnett maintains that he did not have notice and was not aware that he would be sentenced to multiple life terms. We disagree.

■ In the instant case, the circuit court's sentence gave Barnett the benefit of the bargain of the plea agreement. In effect, the circuit court fashioned a sentence that gave Barnett what amounted to a single life sentence. In other words, Barnett effectively received the sentence that he bargained

for—a single life term. Although the circuit court sentenced Barnett to multiple life sentences, the court ran the sentences concurrently. When run concurrently, the multiple life terms amounted to exactly one life term.

Because the circuit court bound itself to the agreement under HRPP Rule 11 (1993),[8] the circuit court had no other alternative but to sentence Defendant to multiple life terms running concurrently. Although Barnett argues that the circuit court erred by not imposing one life term for all of his class A sexual assault offenses, such a sentence would have been illegal.

HRS § 706–600 (1993) provides, in relevant part, that "[n]o sentence shall be imposed otherwise than in accordance with this chapter." Moreover, HRS § 706–661 (1993) provides, in relevant part, that "a person who has been convicted of *a* felony may be sentenced to *an* extended indeterminate term of imprisonment." (Emphasis added.) In other words, the circuit court must sentence a person for *each* charge of which the person is convicted. As the ICA correctly observed:

> HRS § 706–661(1) authorizes life imprisonment "[f]or a class A felony[.]" It does not authorize "a *single* life term of imprisonment" for *multiple* felonies. In other words, the sentence to "a *single* life term of imprisonment" for the aggregate of the *ten class A felonies* is illegal.

*Barnett,* slip op. at 17 (footnote added) (some emphases in original and some added) (brackets in original).

Given that HRS § 706–600 does not authorize a court to impose a *single* sentence on a defendant who has been convicted of *multiple* charges, the circuit court in this case could not legally have sentenced Barnett to only one term of life imprisonment for the aggregate of the ten class A felonies. Because a sentence of *one* life term for *multiple* offenses would have been illegal, the only

---

8. HRPP Rule 11(e)(1) provides in relevant part: The prosecutor and counsel for the defendant, or the defendant when acting pro se, may enter into plea agreements that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to an included or related offense, the prosecutor will take certain actions or adopt certain positions, including the dismissal of other charges and the recommending or not opposing of specific sentences or dispositions on the charge to which a plea was entered. *The court may participate in discussions leading to such plea agreements and may agree to be bound thereby.* (Emphasis added.)

way the circuit court could have given Barnett what he bargained for was to impose a life term for each class A offense he was convicted of and then run each life term concurrently. Therefore, we disagree with Barnett's contention that the circuit court's sentence violated the plea agreement.

## B. *Unavailability of Barnett's Requested Remedy*

■ Moreover, Barnett failed to present a colorable claim for relief, even assuming, *arguendo*, that: (1) the plea agreement was for a single life term, as opposed to multiple life terms running concurrently; and (2) a single life term were materially distinguishable, for purposes of the HPA's determination of minimum terms, from multiple life terms running concurrently. Given Barnett's contention that he was not fully aware of the consequences of his plea, Barnett's proper recourse in this case is a withdrawal of his plea. Instead, he seeks an order to the circuit court to sentence him to concurrent twenty-year terms. This remedy is not available to him.

■ With regard to the withdrawal of a guilty plea, we have previously stated that a defendant is entitled to withdraw his or her guilty plea after imposition of sentence only upon a showing of manifest injustice. *State v. Nguyen*, 81 Hawai'i 279, 292, 916 P.2d 689, 702 (1996) (citing *State v. Cornelio*, 68 Haw. 644, 646, 727 P.2d 1125, 1126–27 (1986)); *see also State v. Merino*, 81 Hawai'i 198, 223, 915 P.2d 672, 697 (1996).

> Manifest injustice occurs when a defendant makes a plea involuntarily or without knowledge of the direct consequences of the plea. *Cf. Reponte* [*v. State* ], 57 Haw. [354,] 362, 556 P.2d [577,] 583 [ (1976) ] (a plea of guilty is not constitutionally acceptable unless made voluntarily and with a full understanding of the consequences); *State v. James*, 176 Wis.2d 230, 500 N.W.2d 345, 348 (Wis.Ct.App.1993) (a "manifest injustice" occurs when a defendant makes a plea involuntarily, or without knowledge of the charge, the consequences of the plea or that the sentence or that the sentence actually imposed could be imposed), *review denied*, 505 N.W.2d 138

(Wis.1993); *Commonwealth v. Holbrook*, 427 Pa.Super. 387, 629 A.2d 154, 158 (1993) ("To establish manifest injustice, [the defendant] must show that his plea was involuntary or was given without knowledge of the charge"), *appeal denied*, 536 Pa. 620, 637 A.2d 280 (1993). There is no manifest injustice when a trial court has made an affirmative showing through an on-the-record colloquy between the court and the defendant which shows that the defendant had a full understanding of what his or her plea connoted and its direct consequences. *Cornelio*, 68 Haw. at 646–47, 727 P.2d at 1127. The on-the-record colloquy ... between the circuit court and [the defendant] shows that the circuit court determined that [the defendant] made his plea voluntarily, and that [the defendant] had a full understanding of what his "no contest" plea connoted and its direct consequences. *See supra* at 282–285, 916 P.2d at 692–695. Thus, the on-the-record colloquy supports the circuit court's finding that [the defendant] failed to demonstrate manifest injustice that would warrant granting the withdrawal of his "no contest" plea.

*Nguyen*, 81 Hawai'i at 292, 916 P.2d at 702 (some brackets in original and some added). In addition, "[c]ourts need not inform defendants prior to accepting their guilty or nolo contendere pleas about every conceivable collateral effect that a conviction might have." *Id.* at 287, 916 P.2d at 697 (citing *Reponte v. State*, 57 Haw. 354, 364, 556 P.2d 577, 584 (1976)).

■ In this case, it is undisputed that Barnett knew that he was pleading guilty to fifteen separate felonies involving sexual assault. Before accepting Barnett's guilty plea, the circuit court conducted a lengthy colloquy on the record to examine the voluntariness of Barnett's plea. The circuit court asked Barnett various questions regarding any outside influence that may have been affecting his decision to plead guilty. The court then asked the prosecution read aloud in open court each charge and their respective factual bases to which Barnett would be pleading. In addition, the circuit court stated:

THE COURT: ... [Y]ou will be stipulating to a single life term of imprisonment with a possibility of parole under Criminal Number 92–0196 for Counts 2, 9, 12, 16, 18, 25, 28, 31, 34 and 39. These are all class A felonies. While counts 1, 19, 21 and 36, which are all class C felonies, will carry the ordinary terms of imprisonment of an indeterminate term of five years to run concurrent to the life term imposed for the class A felonies.

Based upon the circuit court's colloquy with Barnett, it is difficult to imagine that Barnett did not have knowledge of the direct consequences of his guilty plea. At the very least, Barnett knew that he was pleading guilty to fifteen separate sexual assault felonies and, given that all sentences were run concurrently, that he would be sentenced to what effectively would amount to a life term of imprisonment.

In addition, a letter attached to Barnett's guilty plea form stated in relevant part:

Mr. Barnett will stipulate to a single life term of imprisonment ... for counts two, Nine, Twelve, Sixteen, Eighteen, Twenty–Five, Twenty-eight, Thirty–One, thirty-Four and Thirty–Nine (all class "A" felonies) while Counts One, Nineteen, Twenty–One and Thirty–Six (all Class "C" felonies) will carry the ordinary terms of imprisonment of an indeterminate sentence of five years, to run concurrent to the life term imposed for the class "A" felonies.

Barnett stated before his guilty plea was accepted that he had read the forms, had reviewed it with his attorney, and understood what the form contained and what it meant. The fact that Barnett expected a legally impossible certain sentence and did not receive it in precisely the expected form does not render the guilty plea involuntary. *Cf. Eli v. State,* 63 Haw. 474, 477, 630 P.2d 113, 116 (1981) (citing *Masciola v. United States,* 469 F.2d 1057 (3d Cir.1972)). In fact, the record suggests that Barnett received a minimum term of imprisonment (twenty-five years), which was much shorter than originally expected (thirty-five years). Under these circumstances, and given that Barnett received

the benefit of his plea bargain, Barnett has not met his burden of demonstrating manifest injustice so as to entitle him to withdraw his plea. Therefore, Barnett has failed to present a colorable claim under HRPP Rule 40.

Interestingly, however, Barnett is not seeking to withdraw his plea. In his opening brief, Barnett requests that "the case be remanded with instructions to ... sentence [Barnett] ... to a maximum of 20 years." However, Barnett has not cited any authority or any basis that would allow this court to substitute a sentence of concurrent twenty-year terms in this case. The prosecution has not agreed to Barnett's proposed sentence of concurrent twenty-year terms. Indeed, if given the opportunity to renegotiate the plea, the prosecution would be free to bargain for a longer term of imprisonment than the multiple concurrent terms currently in effect or, arguably, even to refuse to bargain at all, thus forcing Barnett to trial.[9] In such a case, Barnett would face the possibility of a maximum sentence of 610 years of imprisonment, or twenty-seven life sentences, with the possibility of parole in 140 years.

■ In addition, it is the *sentencing court* that is required to consider the various factors set forth in HRS § 706–606 (1993), including the presentence report and the defendant's presentation to the court at the sentencing hearing. *See* HRS §§ 706–606, 706–601 (1993), 706–602 (1993), and 706–604 (1993). Accordingly, this court is without power to fashion a sentence in the first instance on appeal. That being the case, we hold that the remedy being sought by Barnett is not available in this case.

## C. *Ineffective Assistance of Counsel*

Barnett's next ground for post-conviction relief alleges ineffective assistance of counsel. In support of his claim, Barnett argues that his trial counsel was ineffective by: (1) entering into an unfulfillable plea agreement; and (2) failing to request a hearing to establish

---

9. Given these possibilities in the event Barnett's plea were withdrawn, a withdrawal of Barnett's plea could arguably result in a longer sentence than the one he is currently serving.

the grounds for the extended terms (*i.e.,* the life terms) imposed at sentencing.[10]

### 1. *The Plea Agreement*

■ Barnett first argues that his trial counsel was ineffective by advising him to agree to an illegal sentence that was unfulfillable. As discussed above, however, Barnett received what he bargained for — a "single life term." In other words, the plea agreement was effectively fulfilled because all of Barnett's sentences for each respective offense were run concurrently to each other. In addition, the exhibits appended to Barnett's HRPP Rule 40 petition show that, before entering his guilty plea, Barnett was informed of the correct maximum term.

Given that Barnett was charged with forty-one counts of sex abuse, Barnett was faced with the possibility of a sentence of up to 610 years. As the ICA observed, Barnett's trial counsel was able to negotiate a plea agreement that amounted to what effectively was a single life term with the possibility of parole. Even though his trial counsel initially predicted that it was "unlikely that Mr. Barnett [would] . . . receive a term of less than 35 years as his minimum mandatory term[,]" Barnett himself acknowledged that he was extremely happy with the plea agreement obtained by his trial counsel. The HPA eventually imposed a minimum prison term of twenty-five years, ten years less than what was anticipated during the plea negotiations. Under these circumstances, we cannot say that the assistance provided to Barnett fell below the range of competence demanded of attorneys in criminal cases.

### 2. *Sentencing*

■ Barnett next contends that his trial counsel's performance at sentencing was not within the range of competence demanded in criminal cases because his trial counsel failed to request a hearing to establish the grounds

for the extended terms. Barnett's contention is without merit.

HRS § 706–662 provides in relevant part: A convicted defendant may be subject to an extended term of imprisonment under section 706–661, if the convicted defendant satisfies one or more of the following criteria:

. . . .

(4) The defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless:

(a) *The defendant is being sentenced for two or more felonies* or is already under sentence of imprisonment for felony[.]

(Emphasis added.) Based upon this language, a defendant is eligible for extended terms of imprisonment under HRS § 706–661 if he or she is "being sentenced for two or more felonies."

In this case, Barnett was sentenced for ten class A felonies and six class C felonies. Given that Barnett was clearly eligible for extended sentencing and that the plea agreement called for extended sentences (*i.e.,* life terms), Barnett through his trial counsel stipulated to the circuit court's finding that Barnett was eligible for the extended terms of imprisonment (*i.e.,* the life terms). Under these circumstances, there was no need to have a hearing to establish the grounds to support the imposition of the life terms. As a tactical matter, Barnett needed to stipulate to the circuit court's finding that sufficient grounds existed to support the extended terms in order to fulfill and obtain the benefit of the plea agreement. Without this finding to support the imposition of the life terms, Barnett could not have received the sentence he bargained for—a life term. Therefore, Barnett has not demonstrated any specific error reflecting the lack of skill on

---

10. Barnett also argues that his trial counsel was ineffective at the HPA hearing by failing to object to oral hearsay testimony presented to the HPA. As discussed *infra* in section III.C., however, HRS § 706–669 allows for victims or their repre-sentatives to make oral comments at HPA minimum term hearings. In light of this holding, Barnett's claim that his counsel provided ineffective assistance at the HPA hearing is without merit.

the part of his trial counsel and has not alleged any prejudice as a result of his trial counsel's failure to request a hearing to establish the grounds supporting the imposition of life terms. Accordingly, we reject Barnett's contention that his trial counsel was ineffective at sentencing.

## C. *The HPA Minimum Term Hearing*

Barnett contends that the HPA erred by allowing the mothers of two victims the opportunity to comment at the minimum term hearing. We disagree.

### 1. *Applicable Rules of Statutory Construction*

■ "[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting *State v. Camara*, 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura*, 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa*, 79 Hawai'i 1, 3, 897 P.2d 928, 930, *reconsideration denied*, 79 Hawai'i 341, 902 P.2d 976 (1995); *State v. Nakata*, 76 Hawai'i 360, 365, 878 P.2d 699, 704, *reconsideration denied*, 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

*Gray v. Administrative Dir. of the Court*, 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto*, 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray*, 84 Hawai'i at 148, 931 P.2d at 590 (quoting *State v. Toyomura*, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*State v. Davia*, 87 Hawai'i 249, 254, 953 P.2d 1347, 1352 (1998) (quoting *Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan*, 87 Hawai'i 217, 229–230, 953 P.2d 1315, 1327 (1998) (citation omitted)).

### 2. *Proceedings Before the HPA—HRS § 706–669*

HRS § 706–669 (1993) provides in relevant part:

**Procedure for determining minimum term of imprisonment.**

. . . .

(7) The State shall have the right to be represented at the hearing by the prosecuting attorney who may present written testimony and make oral comments and the authority shall consider such testimony and comments in reaching its decision. The authority shall notify the prosecuting attorney of the hearing at the time the prisoner is given notice of the hearing. The hearing shall be opened to victims or their designees or surviving immediate family members.

(Bold emphasis in original.) Although the language of HRS § 706–669(7) does not specifically allow oral comments to be made by victims or their representatives, HRS § 706–669(7) does not prohibit such oral comments at the minimum term hearing. This issue, therefore, is one of first impression in this jurisdiction.

Subsection (7) of HRS § 706–669 was added in 1988 as part of Act 282. 1988 Haw. Sess. L. Act 282, § 1 at 527. The committee report recommending the adoption of subsection (7) states in relevant part:

> The purpose of this bill is to allow the prosecuting attorney to appear and present oral and written testimony at minimum term and parole hearings before the Hawaii Paroling Authority ... and to allow attendance by the victims, surviving immediate family member, or designees at minimum term hearings.
>
> Presently, hearings before the Paroling Authority are conducted with the presence of the defendant and his counsel. Prosecuting attorneys are presently allowed to make oral presentation at these hearings. *This bill codifies the procedure permitting the prosecuting attorney to attend parole hearings and present oral and written testimony.* However, the Committee is concerned that oral testimony may be interpreted to include testimony by witnesses. In keeping with the intent that the hearings before the paroling Authority be non-adversarial in nature, the Committee amended the bill by replacing "oral testimony" with "oral comment". *This amendment will make clear that oral presentation by the prosecuting attorney shall not include testimony from witnesses but instead shall take the form of only oral comments.* The bill retains the provision which permits the prosecuting attorney to present written testimony from any interested party.

Sen. Conf. Comm. Rep. No. 270, in 1988 Senate Journal, at 709 (emphases added).

 Considering the language of HRS § 706–669(7) together with its legislative history, it is apparent that the legislature intended to allow witnesses to make oral comments as part of the prosecution's oral presentation. Given that the bill enacting HRS 706–669(7) "codifies the procedure permitting the prosecuting attorney to ... present oral ... testimony," the committee report's statement that "oral presentation by the prosecuting attorney shall not include testimony from witnesses but instead shall take the form of only oral comments" is evidence that the legislature intended to allow interested parties to make oral comments as part of the prosecution's oral presentation. Although the legislature intended to bar interested parties from giving "oral testimony" in the interest of preserving the non-adversarial nature of the hearing, the legislature intended to allow interested parties to attend the hearing and make "oral comments."

Indeed, "testimony" as used by the conference committee in the language of its report could not have meant testimony from the deputy prosecuting attorney. Instead, the "testimony" being referred to in the conference committee's report refers to testimony by victims, witnesses, and other interested parties. Therefore, inasmuch as the bill enacting HRS 706–669(7) "codifies the procedure permitting the prosecuting attorney to ... present oral and written testimony," we see no reason to prohibit victims or their representatives from making oral comments at the minimum term hearings before the HPA.

Our construction of HRS § 706–669 is confirmed by subsequent legislative history. *See Macabio v. TIG Ins. Co.*, 87 Hawai'i 307, 317, 955 P.2d 100, 110 (1998) (recognizing that this court can employ subsequent legislative history "to confirm its interpretation of an earlier statutory provision"). In 1996, HRS § 706–669(7) (Supp.1996) was amended, in relevant part, as follows:

> The State shall have the right to be represented at the hearing by the prosecuting attorney who may present written testimony and make oral comments and the authority shall consider such testimony and comments in reaching its decision. The authority shall notify the prosecuting attorney of the hearing at the time the prisoner is given notice of the hearing. *The hearing shall be opened to victims or their*

*designees or surviving immediate family members who may present a written statement or make oral comments.*

(Emphasis added.) The Supplemental Commentary to this section explains the purpose of the 1996 amendment and states in relevant part:

> *Act 4, Session Laws 1996, amended this section by clarifying that victims may present written statements or oral comments at minimum prison term hearings before the parole board.* The legislature found that the practice of the parole board was to permit victims or their representatives the opportunity to comment at minimum term hearings, although current law did not expressly provide for that opportunity.

Supplemental Commentary to HRS § 706–669 (Supp.1998). Given that the legislature amended HRS § 706–669 after Barnett's minimum term hearing to expressly clarify that victims or their representatives can make oral comments, we are further convinced that HRS § 706–669 allows victims or their representatives to present oral comments at minimum term hearings before the HPA.

Because we hold that HRS § 706–669 allows victims or their representatives the opportunity to make oral comments at minimum prison term hearings before the HPA, Barnett's contention in his HRPP Rule 40 petition that the HPA erred by allowing the mothers of two victims the opportunity to comment at the minimum term hearing was patently without merit and did not establish a colorable claim for purposes of HRPP Rule 40. Therefore, the circuit court correctly denied Barnett's HRPP Rule 40 motion without a hearing.

## IV. CONCLUSION

For the reasons discussed above, we reverse the ICA's decision and affirm the circuit court's order denying Barnett's HRPP Rule 40 petition filed April 24, 1996.