185 P.3d 816

STATE of Hawai'i, Plaintiff–Appellee,

v.

Walter Lee CUTSINGER,
Defendant–Appellant.

No. 28203.

Intermediate Court of Appeals of Hawai'i.

Jan. 30, 2008.

As Amended Jan. 31 and Feb.
5 and Feb. 29, 2008.

Glenn D. Choy, for Defendant–Appellant.

Mark J. Bennett, Attorney General, State of Hawaii, (Donn Fudo, Deputy Prosecuting Attorney, City and County of Honolulu on the answering brief), for Plaintiff–Appellee.

Kimberly Tsumoto Guidry, Deputy Solicitor General, Girard D. Lau, First Deputy Solicitor General, on motion to vacate sentence and remand for resentencing, for plaintiff-appellee.

Deborah L. Kim, Deputy Public Defender, for the amicus curiae.

WATANABE, Presiding Judge, FOLEY, and NAKAMURA, JJ.

Opinion of the Court by NAKAMURA, J.

The parties agree that pursuant to *State v. Maugaotega*, 115 Hawai'i 432, 168 P.3d 562 (2007) (hereinafter, "*Maugaotega II*"), the extended term sentence imposed on Defendant–Appellant Walter Lee Cutsinger (Cutsinger) must be vacated and the case re-

manded for resentencing. After the decision in *Maugaotega II,* the Hawai'i Legislature enacted Act 1 of the 2007 Second Special Session (hereinafter, "Act 1"), 2007 Haw. Sess. L., Second Special Session ——, ——, which took effect on October 31, 2007. The question presented by this appeal is whether Act 1 may be applied retroactively to Cutsinger's resentencing. For the reasons detailed below, we hold that: 1) the retroactive application of Act 1 to Cutsinger's resentencing does not violate the *Ex Post Facto* Clause; and 2) the failure to allege in Cutsinger's complaint the facts necessary to establish his eligibility for an extended term sentence as a persistent offender does not prevent the imposition of an extended term on remand. Accordingly, we remand the case for resentencing in accordance with Act 1.

## BACKGROUND

### I.

On July 12, 2005, Cutsinger was charged by complaint with second degree burglary, in violation of Hawaii Revised Statutes (HRS) § 708–811 (1993) [1] (Count 1), and with possession of burglar's tools, in violation of HRS § 708–812(1)(a) (1993) [2] (Count 2). The com-

plaint alleged that Cutsinger committed the charged offenses on or about June 30, 2005. On January 26, 2006, Cutsinger pleaded guilty as charged to both counts. Cutsinger signed a guilty plea form which informed him that with respect to Count 1, he was subject to a "Maximum Imprisonment" of five years and an "Extended Term of Imprisonment" of ten years. The form included the following acknowledgment by Cutsinger:

> I understand that the court may impose any of the following penalties for the offense(s) to which I now plead: the maximum term of imprisonment, *any extended term of imprisonment,* and any mandatory minimum term of imprisonment specified [in the guilty plea form]. . . .

(Emphasis added.) Through language in the guilty plea form, Cutsinger further acknowledged that he was signing the form "after I have gone over all of it with my lawyer" and that "the Judge questioned me personally in open court to make sure that I knew what I was doing in pleading guilty . . . and understood this form before I signed it."

On May 4, 2006, prior to sentencing, Plaintiff–Appellee State of Hawai'i (the State) filed a motion for an extended term of imprisonment, pursuant to HRS §§ 706–661 and 706–662(1) (Supp.2003),[3] seeking a ten-

1. Hawaii Revised Statutes (HRS) § 708–811 (1993) provides in relevant part:
   (1) A person commits the offense of burglary in the second degree if the person intentionally enters or remains unlawfully in a building with intent to commit therein a crime against a person or against property rights.

2. HRS § 708–812(1)(a) (1993) provides:
   (1) A person commits the offense of possession of burglar's tools if:
   (a) The person knowingly possesses any explosive, tool, instrument, or other article adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking, and the person intends to use the explosive, tool, instrument, or article, or knows some person intends ultimately to use it, in the commission of the offense of the nature described aforesaid[.]

3. At the time Defendant–Appellant Walter Lee Cutsinger (Cutsinger) committed the second degree burglary charged in Count 1, Hawaii Revised Statutes (HRS) §§ 706–661 and 706–662(1) (Supp.2003) provided:
   **§ 706–661 Sentence of imprisonment for felony; extended terms.** In the cases designat-

ed in section 706–662, a person who has been convicted of a felony may be sentenced to an extended indeterminate term of imprisonment. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:
   (1) For murder in the second degree—life without the possibility of parole;
   (2) For a class A felony—indeterminate life term of imprisonment;
   (3) For a class B felony—indeterminate twenty-year term of imprisonment; and
   (4) For a class C felony—indeterminate ten-year term of imprisonment.
   The minimum length of imprisonment for [paragraphs] (2), (3), and (4) shall be determined by the Hawaii paroling authority in accordance with section 706–669.
   **§ 706–662 Criteria for extended terms of imprisonment.** A convicted defendant may be subject to an extended term of imprisonment under section 706–661, if the convicted defendant satisfies one or more of the following criteria:
   (1) The defendant is a persistent offender whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless the defendant has previously been convicted of

year term of imprisonment for the second-degree-burglary count. Attached to the motion was a declaration of a Deputy Prosecuting Attorney (DPA) which alleged that Cutsinger qualified as a "persistent offender" because Cutsinger had been convicted of numerous prior felony offenses committed after he turned eighteen. The DPA's declaration identified the following prior felony convictions, which were entered against Cutsinger on September 1, 2004, in six separate Hawai'i criminal cases (hereinafter, the "six prior cases"):

a. In Cr. No. 03–1–1158, Cutsinger was convicted of Burglary in the Second Degree and Promoting Dangerous Drugs in the Third Degree.

b. In Cr. No. 03–1–1306, Cutsinger was convicted of Burglary in the Second Degree.

c. In Cr. No. 03–1–2452, Cutsinger was convicted of Attempted Burglary in the Second Degree.

d. In Cr. No. 04–1–0045, Cutsinger was convicted of Burglary in the Second Degree.

e. In Cr. No. 04–1–0056, Cutsinger was convicted of three counts of Burglary in the Second Degree.

f. In Cr. No. 04–1–0910, Cutsinger was convicted of six counts of Burglary in the Second Degree.

The DPA's declaration also alleged that Cutsinger's commitment for an extended term of imprisonment "is necessary for the protection of the public" because:

a. [Cutsinger] was on probation in [the six prior cases] when he committed the [second degree burglary in this case].

b. [Cutsinger] has an extensive criminal history.

c. [Cutsinger's] criminality has continued despite his prior contacts with the criminal justice system.

d. [Cutsinger] has failed to benefit from the criminal justice system.

e. [Cutsinger] has demonstrated a total disregard for the rights of others and a poor attitude toward the law.

f. [Cutsinger] has demonstrated a pattern of criminality which indicates that he is likely to be a recidivist in that he cannot conform his behavior to the requirements of law.

g. Due to the quantity and seriousness of [Cutsinger's] past convictions and the seriousness of the instant offense, [Cutsinger] poses a serious threat to the community and his long term incarceration is necessary for the protection of the public.

At sentencing, Cutsinger stipulated to the admission of certified copies of court documents establishing his felony convictions in

two felonies committed at different times when the defendant was eighteen years of age or older.
HRS § 706–662(2) through (6) (Supp.2003) established criteria for five additional offender classifications: "professional criminal," "dangerous person," "multiple offender," "offender against the elderly, handicapped, or a minor under the age of eight," and "hate crime offender." Like HRS § 706–662(1), the other extended term offender classifications required an additional finding that the defendant was a person "whose imprisonment for an extended term is necessary for the protection of the public," HRS § 706–662(2), (3), (5), and (6), or, in the case of a "multiple offender," an additional finding that the defendant was a person "whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public." HRS § 706–662(4). Thus all six subsections of HRS § 706–662 required a finding that the imposition of an extended term of imprisonment is necessary for the protection of the public (hereinafter, the "necessity finding").

In 2006, the Hawai'i Legislature temporarily amended the Supp.2003 version of HRS §§ 706–661 and –662 that was in effect when Cutsinger committed the Count 1 burglary by enacting Act 230 (hereinafter, "Act 230"). 2006 Haw. Sess. L. Act 230, §§ 23–24 at 1011–13. The amendments to HRS §§ 706–661 and –662 made by Act 230 went into effect on June 22, 2006, and expired on June 30, 2007, at which time the Supp. 2003 version of HRS §§ 706–661 and –662 was reenacted. 2006 Haw. Sess. L. Act 230, § 54 at 1025. Subsequently, the Hawai'i Legislature enacted Act 1 of the 2007 Second Special Session ("Act 1"), 2007 Haw. Sess. L., Second Special Session ——, ——, which amended the reenacted Supp.2003 version of HRS §§ 706–661 and –662 as well as HRS § 706–664. Act 1 took effect on October 31, 2007. Unless otherwise indicated, our reference in this opinion to HRS § 706–661 and HRS § 706–662 will mean the Supp.2003 version of those statutes. We will refer to Act 1 when we intend to refer to the current version of §§ 706–661, –662, and –664, as amended by Act 1.

the six prior cases. The DPA argued for an extended term of imprisonment on the second-degree-burglary count and for the extended term to be imposed consecutively to the sentences in the six prior cases. The DPA noted that Cutsinger's criminal history spanned twenty years and that he had a total of thirty-five felony convictions, of which at least thirty were for the offense of second degree burglary. The DPA asserted that in light of Cutsinger's criminal history, "he's not going to change," and would resume committing crimes as soon as he is released from prison. In opposition, the defense argued that Cutsinger's criminal history was attributable to his drug and mental health problems, that he was making progress in dealing with those issues, and that there was no record of violence associated with Cutsinger's burglaries or other criminal activities.

The Circuit Court of the First Circuit (circuit court) granted the State's motion for an extended term of imprisonment.[4] It sentenced Cutsinger to a ten-year extended term of imprisonment on the second-degree-burglary count and to a one-year term of imprisonment on the possession-of-burglar's-tools count.[5] The court ran the terms of imprisonment for these two counts concurrent with each other, but consecutive to Cutsinger's sentences in the six prior cases.[6]

Cutsinger filed a motion to reduce sentence, arguing that the circuit court had erred in sentencing him to an extended term of imprisonment because

the jury did not decide that such extended term of imprisonment was necessary for the protection of the public, and, therefore, the extended terms sentence imposed by the Court ran afoul of the Sixth Amendment to the United States Constitution as interpreted by the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)[;] *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403

(2004)[;] and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

He also argued that imposing the extended term consecutively to the sentences in the six prior cases violated the Sixth Amendment. Cutsinger requested that the ten-year extended term of imprisonment be reduced to a five-year non-extended term and be imposed concurrently with the sentences in the six prior cases.

The circuit court granted Cutsinger's motion to reduce sentence in part by ordering that the sentences in this case run concurrently with the sentences in the six prior cases. The court denied the motion in part by declining to reduce the ten-year extended term of imprisonment imposed on the second-degree-burglary count. On September 7, 2006, the circuit court entered an Amended Judgment which incorporated its rulings on Cutsinger's motion to reduce sentence.

## II.

Cutsinger filed a notice of appeal from the Amended Judgment and the circuit court's "Order Granting in Part and Denying in Part [Cutsinger's] Motion to Reduce Sentence," which was entered on September 27, 2006. In his opening brief, Cutsinger argued that the sentencing court violated his right to trial by jury when it sentenced him to an extended term of imprisonment pursuant to HRS §§ 706–661 and 706–662. Cutsinger cited the recently decided case of *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), as the principal authority supporting his appeal. He further noted that in light of *Cunningham*, the United States Supreme Court, on a petition for writ of certiorari, had vacated the judgment of the Hawai'i Supreme Court in *State v. Maugaotega*, 107 Hawai'i 399, 114 P.3d 905 (2005) (hereinafter, "*Maugaotega I*"), in which the

---

4. The Honorable Michael A. Town presided.

5. The Circuit Court of the First Circuit (circuit court) also imposed a mandatory minimum term of four years of imprisonment on the second-degree-burglary count based on Cutsinger's status as a repeat offender.

6. The circuit court had earlier revoked the probationary sentences it originally imposed in the six prior cases (Cr. Nos. 03–1–1158, 03–1–1306, 03–1–2452, 04–1–0045, 04–1–0056, and 04–1–0910). At the same hearing it imposed sentence in this case, the court sentenced Cutsinger to concurrent terms of imprisonment on the convictions in the six prior cases, including five-year terms of incarceration on all the felony offenses.

Hawai'i Supreme Court had affirmed Maugaotega's extended term sentence, and remanded the case for further consideration. Cutsinger argued that his extended term sentence "runs afoul of [*Cunningham*] to the same extent as Maugaotega's [extended term sentence]."

### A.

After briefing in this case was completed, the Hawaii Supreme Court decided *Maugaotega II*, 115 Hawai'i 432, 168 P.3d 562, on October 1, 2007. *Maugaotega II* was decided after the United States Supreme Court vacated the Hawai'i Supreme Court's judgment in *Maugaotega I*, 107 Hawai'i 399, 114 P.3d 905, and remanded the case for further consideration in light of *Cunningham*. *Maugaotega v. Hawai'i*, 549 U.S. 1191, 127 S.Ct. 1210, 167 L.Ed.2d 37 (2007).

Prior to *Maugaotega II*, the Hawai'i Supreme Court had upheld the constitutionality of Hawai'i's extended term sentencing scheme against challenges based on *Apprendi* and the refinements made to *Apprendi* in *Blakely* and *Booker*. *Maugaotega II*, 115 Hawai'i at 437–42, 168 P.3d at 567–72.[7] In *Maugaotega II*, however, the Hawai'i Supreme Court concluded that *Cunningham* undermined its prior analysis and left no doubt that a majority of the United States Supreme Court would find Hawai'i's extended term sentencing scheme to be unconstitutional. *Id.* at 445–47, 168 P.3d at 575–77.

Under HRS § 706–662, a finding that an extended term of imprisonment is necessary for the protection of the public (the "necessity finding") must be made before a defendant may be subject to an extended term of imprisonment for any of the six offender classifications, including persistent offender, set forth in HRS § 706–662. In *Maugaotega II*, the Hawai'i Supreme Court held that HRS § 706–662[8] was unconstitutional on its face because it required the sentencing court, rather than the jury, to make the necessity finding:

> Inasmuch as (1) HRS § 706–662, in all of its manifestations, authorizes the sentencing court to extend a defendant's sentence beyond the "standard term" authorized solely by the jury's verdict (2) by requiring the sentencing court, rather than the trier of fact, to make an additional necessity finding that (3) does not fall under *Apprendi's* prior-or-concurrent-convictions exception, we hold that the statute is unconstitutional on its face. Therefore, Maugaotega's extended term sentences imposed by the circuit court violated his sixth amendment right to a jury trial and were illegal. Moreover, similar constitutional infirmities infect HRS § 706–662 as a whole, to the extent that each subsection

---

7. The constitutionality of the Hawai'i extended term sentencing scheme was: 1) upheld against a challenge based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in *State v. Kaua*, 102 Hawai'i 1, 72 P.3d 473 (2003), 2) upheld against a challenge based on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), in *State v. Rivera*, 106 Hawai'i 146, 102 P.3d 1044 (2004), and 3) upheld against a challenge based on *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), in *State v. Maugaotega*, 107 Hawai'i 399, 114 P.3d 905 (2005) ("*Maugaotega I*").

8. Maugaotega was sentenced under the same Supp. 2003 version of HRS § 706–662 as Cutsinger. Maugaotega was sentenced as a "multiple offender" under HRS § 706–662(4) while Cutsinger was sentenced as a "persistent offender" under HRS § 706–662(1). The Supp.2003 version of HRS § 706–662(1) pertaining to a "persistent offender" is set forth *supra* in footnote 3. The Supp.2003 version of HRS § 706–662(4) pertaining to a "multiple offender" provided:

§ 706–662 **Criteria for extended terms of imprisonment.** A convicted defendant may be subject to an extended term of imprisonment under section 706–661, if the convicted defendant satisfies one or more of the following criteria:

. . . .

(4) The defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless:

(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or

(b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively, would equal or exceed in length the maximum of the extended term imposed or would equal or exceed forty years if the extended term imposed is for a class A felony.

requires the sentencing court to make the offending necessity finding.

*Maugaotega II*, 115 Hawai'i at 446–47, 168 P.3d at 576–77 (footnotes omitted).

After concluding that HRS § 706–662 was unconstitutional on its face, the supreme court went on to consider whether it was appropriate for the court to exercise its inherent judicial power to authorize, upon remand, the empaneling of a jury to make the required necessity finding. *Id.* at 448–51, 168 P.3d at 578–81.[9] The court referred to the 2006 Hawai'i Legislature's enactment of Act 230 ("Act 230"), which temporarily amended HRS §§ 706–661 and –662, 2006 Haw. Sess. L. Act 230 §§ 23, 24, and 54 at 1011–13, 1025. *Id.* at 449, 168 P.3d at 579.[10] The court noted that in enacting Act 230, the Legislature did not vest the jury with the power to make the factual findings required to impose an extended term of imprisonment, but rather directed that the sentencing court should retain that responsibility. *Id.* Viewing Act 230 as an expression of the Legislature's intent, the supreme court declined to exercise its inherent judicial power to order that a jury be empaneled, on remand, to make the factual findings required to impose an extended term:

Nevertheless, in Act 230, the legislature expressed its intent regarding how best to conform our extended term sentencing regime to the requirements of *Apprendi* and its progeny and, in so doing, did not vest in the jury the power to find the requisite aggravating facts but, rather, directed that the sentencing court should retain that responsibility. *See* 2006 Haw. Sess. L. Act 230, §§ 23 and 24 at 1012–13; notes 1 and

2, *supra.* We therefore do not believe it to be appropriate for this court to assert its inherent authority to empanel a jury on remand because, as a rule,

[p]rudential rules of judicial self-governance properly limit the role of the courts in a democratic society. *Cf. Trustees of OHA v. Yamasaki,* 69 Haw. 154, 171, 737 P.2d 446, 456 (1987); *Life of the Land v. Land Use Commission,* 63 Haw. 166, 172, 623 P.2d 431, 438 (1981) (citing *Warth v. Seldin,* 422 U.S. 490, 498[, 95 S.Ct. 2197, 45 L.Ed.2d 343] ... (1975)).... [One] such rule is that, "even in the absence of constitutional restrictions, [courts] must still carefully weigh the wisdom, efficacy, and timeliness of an exercise of their power before acting, *especially where there may be an intrusion into areas committed to other branches of government." Id.* (emphasis added) (citation omitted)....

*Id.* at 449–50, 168 P.3d at 579–80 (footnote omitted). Instead, the court vacated Maugaotega's extended term sentence and remanded the case for non-extended term sentencing. *Id.* at 434, 168 P.3d at 564.

### B.

In the wake of *Maugaotega II,* the Hawai'i Legislature enacted Act 1, which took effect on October 31, 2007. Act 1 amended HRS §§ 706–661, –662, and –664 and provides for a jury to find the facts necessary for the imposition of an extended term of imprisonment, including the necessity finding, unless the right to a jury determination is waived by the defendant. Act 1, § 4. The facts

**9.** In *State v. Maugaotega,* 115 Hawai'i 432, 168 P.3d 562 (2007) ("*Maugaotega II* "), the Hawai'i Supreme Court noted that "[t]he United States Supreme Court has always exempted prior convictions from the *Apprendi* rule." *Id.* at 446 n. 15, 168 P.3d at 576 n. 15. The Hawai'i Supreme Court saw "no reason why the same exception would not apply to multiple concurrent convictions under HRS § 706–662(4)...." *Id.* Thus, under *Apprendi* and its progeny, the prior or concurrent convictions necessary to establish that a defendant was a persistent offender (HRS § 706–662(1)) or a multiple offender (HRS § 706–662(4)) need not be made by a jury. *Cunningham v. California,* 549 U.S. 270, ——, 127 S.Ct. 856, 860, 166 L.Ed.2d 856 (2007). For these offender classifications, the Sixth Amendment only requires that the jury make the predicate finding regarding the need to impose an extended term of imprisonment for the protection of the public, i.e., the necessity finding.

**10.** As previously noted, the temporary amendments made by Act 230 to HRS §§ 706–661 and –662 were in effect from June 22, 2006, until they expired on June 30, 2007, and upon their expiration, the Supp.2003 version of HRS §§ 706–661 and –662 was reenacted. *See supra* note 3. In *Maugaotega II,* the Hawai'i Supreme Court described the temporary amendments made by Act 230 and quoted the portions of HRS §§ 706–661 and –662 that were amended by Act 230. *Maugaotega II,* 115 Hawai'i at 434 n. 1 and n. 2, 447, 168 P.3d at 564 n. 1 and n. 2, 577.

necessary to impose an extended term must be proven beyond a reasonable doubt. *Id.* The Legislature stated that its intent in enacting Act 1 was, in relevant part, as follows:

> The purpose of this Act is to amend Hawaii's extended term sentencing statutes to ensure that the procedures used to impose extended terms of imprisonment comply with the requirements set forth by the United States Supreme Court and Hawaii supreme court. The legislature intends that these amendments apply to any case that requires resentencing because of the decisions in the *Apprendi, Blakely, Booker, Cunningham*, and *Maugaotega [II]* cases. . . . To the extent that this Act applies retroactively, the legislature finds that it does not subject any offender to additional punishment or other disadvantage.

Act 1, § 1. Act 1 provides that it "shall apply to all sentencing or resentencing proceedings pending on or commenced after the effective date of this Act, whether the offense was committed prior to, on, or after the effective date of this Act." Act 1, § 5. Act 1 further provides that "[a] defendant whose extended term of imprisonment is set aside or invalidated shall be resentenced pursuant to this Act upon request of the prosecutor." *Id.*

### C.

On November 28, 2007, the State filed a "Motion to Vacate Sentence and Remand for Resentencing in Accordance with Act 1 (2007 2nd Special Session)" (hereinafter, the "State's Remand Motion"). We requested the Public Defender of the State of Hawai'i (Public Defender) to file an amicus curiae brief that: 1) addresses the effect that Act 1 has on *Maugaotega II*, including whether Act 1 can be applied retroactively; and 2) responds to the arguments raised in the State's Remand Motion. We also directed Cutsing-

er to file a response to the State's Remand Motion. Cutsinger filed his response to the State's Remand Motion on January 4, 2008, and the Public Defender filed an amicus curiae brief on January 7, 2008. Cutsinger also filed a "Motion for Disposition on the Basis of Appellate Briefings" on January 2, 2008, and the State filed its response to this motion on January 10, 2008. On January 15, 2008, Cutsinger filed a "Notice of Intent to Adopt Arguments in 'Appellant Brian Jess' Supplemental Brief,' Filed December 26, 2007 in No. 28483, *State of Hawaii v. Brian Jess.*" On January 16, 2008, Cutsinger and the State participated in oral argument before this court.

### DISCUSSION

As previously noted, both Cutsinger and the State agree that pursuant to *Maugaotega II*, the extended term sentence imposed on Cutsinger must be vacated and the case remanded for resentencing. They disagree over: 1) whether Act 1 may be applied retroactively to Cutsinger's resentencing and 2) whether we should reach that issue in this appeal. We answer yes to both questions.

### I.

■ Cutsinger [11] argues that we should remand the case for resentencing without deciding whether Act 1 may be applied retroactively to his resentencing because that question is not yet ripe for review.[12] We disagree.

This case must be remanded for resentencing. The State has stated with certainty in pleadings filed on appeal and at oral argument that (unless prohibited by the appellate courts) it will seek an extended term of imprisonment in accordance with the proce-

---

11. In this appeal, Cutsinger and the amicus curiae, the Public Defender of the State of Hawai'i (Public Defender), make the same basic arguments. At oral argument Cutsinger stated that he was adopting the arguments made by the Public Defender. In this opinion, we will attribute to Cutsinger the arguments made by either Cutsinger or the Public Defender.

12. Hawai'i courts are not bound by the "case or controversy" requirement and "[n]othing in Article III of the Federal Constitution prevents a

state appellate court from rendering an advisory opinion concerning the constitutionality of state legislation if it considers it appropriate to do so." *State v. Fields*, 67 Haw. 268, 274 & n. 4, 686 P.2d 1379, 1385 & n. 4 (1984) (brackets and certain internal quotation marks omitted). However, "prudential rules of judicial self-governance" militate against a court's issuing an advisory opinion or deciding matters that are not ripe for adjudication. *Id.* at 273–75, 686 P.2d at 1385 (certain internal quotation marks omitted).

dures set forth in Act 1 when Cutsinger is resentenced on remand. Thus, our determination of whether Act 1 can be applied retroactively to Cutsinger's resentencing is not an advisory opinion on an abstract issue. Instead, it is a question that must be resolved so that the circuit court will know how to proceed with Cutsinger's resentencing. In our view, our deciding this question is not materially different from the Hawai'i Supreme Court's reaching the question of how resentencing was to be conducted on remand in *Maugaotega II*, 115 Hawai'i at 447–51, 454–62, 168 P.3d at 577–81, 584–92.

We also reject Cutsinger's claim that our deciding whether Act 1 applies retroactively to his resentencing impinges on his due process rights to notice and an opportunity to be heard. The State's Remand Motion was filed on November 28, 2007. Cutsinger was given until January 4, 2008, to respond in writing to the State's motion, and he was also given the chance to present oral argument on January 16, 2008. Cutsinger received sufficient notice and a fair opportunity to raise any and all arguments as to why Act 1 should not apply to his resentencing on remand.

## II.

### A.

Act 1, by its explicit terms, applies retroactively to Cutsinger's resentencing. Act 1 provides that it "shall apply to all sentencing or resentencing proceedings pending on or commenced after the effective date of this Act, whether the offense was committed prior to, on, or after the effective date of this Act." Act 1, § 5. Cutsinger argues that because in *Maugaotega II*, the Hawai'i Supreme Court held that the Supp.2003 version of HRS § 706–662, which was in effect when Cutsinger committed the instant burglary, was unconstitutional on its face, applying Act 1 retroactively would violate the *Ex Post Facto* Clause, Article 1, § 10, cl. 1, of the United States Constitution. The State counters that applying Act 1 retroactively would not violate the *Ex Post Facto* Clause because

Act 1 does not subject Cutsinger to disadvantage in the form of increased punishment and effects a procedural change to Hawai'i's sentencing laws. We agree with the State.

We start our analysis with the proposition that Cutsinger bears a heavy burden in establishing that Act 1's retroactivity provision is unconstitutional. The Hawai'i Supreme Court has long held that "(1) legislative enactments are presumptively constitutional; (2) a party challenging a statutory scheme has the burden of showing unconstitutionality beyond a reasonable doubt; and (3) the constitutional defect must be clear, manifest, and unmistakable." *Convention Ctr. Auth. v. Anzai*, 78 Hawai'i 157, 162, 890 P.2d 1197, 1202 (1995) (internal quotation marks and brackets omitted).

Article I, section 10, clause 1, of the United States Constitution provides in relevant part: "No State shall ... pass any ... ex post facto Law." [13] The United States Supreme Court has summarized the characteristics of a statute prohibited by the *Ex Post Facto* Clause as follows:

> It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*.

*Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 70 L.Ed. 216 (1925)).

There is no *ex post facto* clause in the Hawai'i Constitution. *State v. Nakata*, 76 Hawai'i 360, 374 n. 21, 878 P.2d 699, 713 n. 21 (1994). Therefore the question of whether the retroactive application of Act 1 violates the *ex post facto* prohibition is strictly a matter of federal constitutional law. *See id.* at 374–76, 878 P.2d at 713–15.[14]

---

13. Article I, section 9, clause 3, of the United States Constitution contains a corresponding provision which prohibits Congress from passing any "ex post facto Law."

14. HRS § 1–3 (1993) provides that "[n]o law has any retrospective operation, unless otherwise expressly or obviously intended." Act 1 expressly provides for its retroactive application and thus satisfies the condition for retroactive application imposed by HRS § 1–3.

The *ex post facto* prohibition was included in the United States Constitution for two reasons. *Miller v. Florida*, 482 U.S. 423, 429–30, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). The first "was to assure that federal and state legislatures were restrained from enacting arbitrary or vindictive legislation." *Id.* at 429, 107 S.Ct. 2446. The second was to assure "that legislative enactments give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Id.* at 430, 107 S.Ct. 2446 (internal quotations marks omitted). Thus, "central to the *ex post facto* prohibition is a concern for the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Id.* (internal quotations marks omitted).

Under the Supreme Court's test for determining whether a criminal law falls within the *ex post facto* prohibition, two critical elements must be present: "first, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." *Id.* (internal quotation marks omitted). Even if these two conditions are met, however, there is an exception for procedural changes made to the law. *Dobbert v. Florida*, 432 U.S. 282, 292–93, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). The *ex post facto* prohibition was not intended to "limit the legislative control of remedies and modes of procedure which do not affect matters of substance." *Id.* As used in this context, the term "procedural" "refers to changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes." *Collins*, 497 U.S. at 45, 110 S.Ct. 2715. Thus, "[e]ven though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto*." *Dobbert*, 432 U.S. at 293, 97 S.Ct. 2290.

**B.**

**1.**

■ We conclude that the retroactive application of Act 1 does not disadvantage Cutsinger because it does not subject him to "increase[d] punishment beyond what was prescribed" when his burglary offense was committed. *Miller*, 482 U.S. at 430, 107 S.Ct. 2446. When Cutsinger committed the burglary charged in this case, he was subject to a ten-year extended term of imprisonment pursuant to the statutes then in effect upon a showing that he was "a persistent offender whose imprisonment for an extended term is necessary for protection of the public." HRS §§ 706–661 and –662(1). Under Act 1, he is subject to the same ten-year term of imprisonment based on the same criteria. Act 1, §§ 2 and 3.

Indeed, Act 1 provides Cutsinger with additional benefits not contained in the prior law. Act 1 gives Cutsinger the right and option to have a jury (instead of only the sentencing court) determine the facts necessary to impose an extended term of imprisonment. Act 1, § 4.[15] It also requires that such facts be proven beyond a reasonable doubt. *Id.*[16]

Act 1 "does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed." *Collins*, 497 U.S. at 52, 110 S.Ct. 2715. Accordingly, Act 1's retroactive application to Cutsinger does not violate the *Ex Post Facto* Clause of Article I, § 10. *See id.; Dobbert*, 432 U.S. at 294, 97 S.Ct. 2290 ("It is axiomatic that for a law to be ex post facto it must be more onerous than the prior law.").

**15.** Under Act 1, a defendant may waive the right to a jury determination of the facts necessary for the imposition of an extended term of imprisonment, in which case that determination shall be made by the sentencing court. Act 1, § 4.

**16.** Prior to *Maugaotega II*, the finding that the defendant was "a member of the class of offenders to which the particular subsection of HRS § 706–662 applies" had to be made beyond a

reasonable doubt. *Maugaotega II*, 115 Hawai'i at 437–38, 168 P.3d at 567–68 (brackets and block quote format omitted); *State v. Rivera*, 106 Hawai'i 146, 161, 102 P.3d 1044, 1059 (2004). However, the determination of the necessity finding was subject to ordinary sentencing procedures. *Maugaotega II*, 115 Hawai'i at 438, 168 P.3d at 568. Under Act 1, the necessity finding must also be proven beyond a reasonable doubt. Act 1, § 4.

2.

In addition, the pivotal change made by Act 1—providing the defendant with the right to have a jury determine the facts necessary to impose an extended term—is a procedural change to Hawai'i's extended term sentencing statutes. It therefore falls within the procedural-change exception to the *ex post facto* prohibition. *See Dobbert,* 432 U.S. at 293, 97 S.Ct. 2290.

Rules that allocate decision-making authority, such as the *Apprendi* requirement that a jury rather than a judge determine sentencing-enhancing facts, "are prototypical procedural rules." *Schriro v. Summerlin,* 542 U.S. 348, 353, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).[17] In *Dobbert,* the United States Supreme Court concluded that a statute which changed the roles played by the judge and jury in determining whether the death penalty should be imposed only effected a procedural change. *Dobbert,* 432 U.S. at 292–94, 97 S.Ct. 2290. It thus held that the retroactive application of the statute did not constitute an *ex post facto* violation. *Id.* at 292, 97 S.Ct. 2290. In *Collins,* the Supreme Court stated that the Sixth Amendment right to a jury trial, on which *Apprendi* and its progeny are based, "is not a right that has anything to do with the definition of crimes, defenses, or punishments, which is the concern of the *Ex Post Facto* Clause." *Collins,* 497 U.S. at 51, 110 S.Ct. 2715.

Act 1 sets forth a new procedure which affords defendants the right to jury fact-finding in extended term sentencing in order to conform Hawai'i's extended term statutes with the requirements of *Apprendi* as elucidated in *Cunningham.* The procedural change effected by Act 1 does not violate the *Ex Post Facto* Clause.

17. In *Schriro v. Summerlin,* 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), the United States Supreme Court held that *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which applied *Apprendi's* requirement of jury fact-finding for sentencing enhancements to facts necessary to impose the death penalty, established a new procedural rule that does not apply retroactively to cases already final on direct review. *Schriro,* 542 U.S. at 353–55, 358, 124 S.Ct. 2519.

18. In *State v. Von Geldern,* 64 Haw. 210, 213, 216, 638 P.2d 319, 322, 324 (1981), the Hawai'i

3.

The Hawai'i Supreme Court's decision in *Nakata* supports our conclusion that the retroactive application of Act 1 does not violate the *Ex Post Facto* Clause. In *Nakata,* the court held that it was permissible to retroactively apply amendments made to the statute for driving under the influence of intoxicating liquor (DUI) by Act 128, 1993 Haw. Sess. L. 179 (hereinafter, "Act 128"). *Nakata,* 76 Hawai'i at 362–63, 878 P.2d at 701–02. The Hawai'i Legislature enacted Act 128 to amend the DUI statute "by lowering the penalties for a first offense, with the intent of eliminating the right to a jury trial for a first-offense DUI charge." *Id.* at 362, 878 P.2d at 701. Act 128 specifically provided that it applied retroactively to all pending first-offense DUI cases. *Id.*

After concluding that Act 128 eliminated the right to a jury trial for first-offense DUI charges, the supreme court considered whether the retroactive application of Act 128 violated the *Ex Post Facto* Clause. *Id.* at 374–75, 878 P.2d at 713–14. The court concluded that Act 128 passed the constitutional test set forth in *Collins.* The court reasoned that Act 128 did not increase, but reduced the possible punishment, and that its provisions were ameliorative and remedial. *Id.* at 375, 878 P.2d at 714 (citing *State v. Von Geldern,* 64 Haw. 210, 213, 216, 638 P.2d 319, 322, 342 (1981)).[18] The court specifically rejected the appellants' claim that Act 128 violated the *Ex Post Facto* Clause because it divested them of the right to a jury trial. Relying on *Collins,* the court concluded that in the context of an *ex post facto* analysis, whether a defendant will be tried by a judge or jury was a "procedural determination." *Id.* at 376, 878 P.2d at 715. Accordingly, the

Supreme Court ruled that the retroactive application of amendments to a sentencing statute, which permitted a judge to consider mitigating factors and possibly reduce a mandatory minimum sentence, did not violate the *Ex Post Facto* Clause because the amendments were ameliorative and remedial. Similarly, in *Dobbert v. Florida,* 432 U.S. 282, 292, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), the United States Supreme Court cited the ameliorative nature of the statutory amendments in question as an independent basis for its conclusion that the retroactive application of the amendments did not violate the *Ex Post Facto* Clause.

court held that "retrospectively applying Act 128 does not violate the *ex post facto* clause of the United States Constitution." *Id.*

As in *Nakata*, Act 1 does not increase the punishment for criminal defendants and is ameliorative and remedial in the sense that it provides defendants with benefits not contained in the prior law. Moreover, under *Nakata*, the change made by Act 1 in providing defendants with the right to a jury determination of the facts necessary to impose an extended term is properly characterized as a procedural change, which is outside the purview of the *Ex Post Facto* Clause.

### C.

Under circumstances analogous to this case, courts from other jurisdictions have rejected *ex post facto* challenges to the retroactive application of statutory amendments made to cure sentencing statutes that were found unconstitutional based on *Apprendi* and its progeny. These courts have held that there is no *ex post facto* violation in applying the amended sentencing laws to resentence defendants, who had previously been sentenced to an enhanced prison term under statutes found unconstitutional, to the same enhanced term.

In *Hankerson v. State*, 723 N.W.2d 232, 234 (Minn.2006), the defendant was sentenced pre-*Blakely* to an aggravated sentence of 264 months of imprisonment under a sentencing scheme similar to that found unconstitutional in *Blakely*. In response to *Blakely*, the Minnesota legislature amended its sentencing laws. *Id.* Like Act 1, the Minnesota amendments provided for sentencing juries and bifurcated trials. *Id.* Also like Act 1, the Minnesota amendments were enacted to apply retroactively. *Id.* at 235.

After the sentencing amendments were enacted, Hankerson filed a petition for post-conviction relief, arguing that her aggravated sentence violated *Blakely* and thus, her sentence must be vacated and a non-aggravated sentence imposed. *Id.* at 235. The sentencing court scheduled a resentencing jury trial pursuant to the new statutory amendments, and Hankerson appealed. The Minnesota Supreme Court held that applying the newly amended sentencing laws to Hankerson did not violate the *Ex Post Facto* Clause:

*Collins* and *Dobbert* make clear that a change affecting the identity of the fact finder is procedural and thus is not burdened by ex post facto restrictions. The effect of the 2005 amendments to section 244.10 was to change the roles of the judge and jury. This is a procedural change that did not add aggravating factors, eliminate elements of aggravating factors, or increase the duration of the sentence authorized by a finding of aggravating factors.... *The amendments only changed the procedure used to establish the aggravating factors. ...*

*Even if the 2005 amendments did not fall under this procedural law exception, they are not prohibited as ex post facto laws because they do not work to Hankerson's disadvantage.* "It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law." *Dobbert*, 432 U.S. at 294, 97 S.Ct. 2290[, 53 L.Ed.2d 344]; *see also Lynce*, 519 U.S. at 441, 117 S.Ct. 891[, 137 L.Ed.2d 63]. *The 2005 sentencing amendments inure to Hankerson's advantage because they afford her a new sentencing hearing where the quantum of the proof will be higher.* They vindicate, not violate, Hankerson's constitutional rights.

*Id.* at 242 (emphases added).

In *People v. Crutchfield*, 353 Ill.App.3d 1014, 289 Ill.Dec. 731, 820 N.E.2d 507 (2004), the Illinois Court of Appeals held that the retroactive application of statutory amendments made to comply with *Apprendi* did not violate the *ex post facto* prohibition. Prior to *Apprendi*, a jury at Crutchfield's first trial found him guilty of first-degree murder. *Id.*, 289 Ill.Dec. at 741, 820 N.E.2d at 517. At sentencing, Crutchfield received an enhanced sentence of natural-life imprisonment based on findings made by the trial court, and not the jury, that the murder had been accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. *Id.* Crutchfield appealed, and his conviction was overturned for trial error and the case remanded for a new trial.

In the meantime, *Apprendi* was decided and the Illinois Legislature amended its sentencing laws so that consistent with *Appren-*

*di,* aggravating facts used to increase punishment beyond the statutory maximum were required to be submitted to the trier of fact and proved beyond a reasonable doubt. *Id.,* 289 Ill.Dec. at 740, 820 N.E.2d at 516. On remand at Crutchfield's retrial, the prosecution followed the requirements of the amended law and submitted the sentencing-enhancing factor to the jury for its determination. *Id.,* 289 Ill.Dec. at 741, 820 N.E.2d at 517. The jury found Crutchfield guilty of first degree murder and that the aggravating factor had been established. *Id.* Based on the jury's finding at the retrial, the court reimposed the same sentence of natural-life imprisonment. *Id.*

Crutchfield again appealed, arguing that the application of the amended law to his retrial violated the *ex post facto* prohibition because it resulted in his being convicted of an offense that was not in existence at the time of the murder, namely, murder accompanied by the aggravating factor. *Id.,* 289 Ill.Dec. at 739, 820 N.E.2d at 515. The Illinois Court of Appeals rejected this claim. The court concluded that the new amendments had not changed the elements or range of conduct for the offense of murder. Instead, the amendments only changed the "mode of procedure for finding an aggravating factor for an enhanced sentence." *Id.,* 289 Ill.Dec. at 741, 820 N.E.2d at 517. The court held that this was a "procedural change" which did not violate the *ex post facto* prohibition. *Id.*

### D.

Cutsinger, however, argues that because the Hawai'i Supreme Court in *Maugaotega II* held that the Supp.2003 version of HRS § 706–662 was "unconstitutional on its face," the statute was void *ab initio* and thus a nullity. Cutsinger contends that this means that HRS § 706–662 "was not, and never has been, a part of the law in effect at any time in Hawaii." Cutsinger claims that: 1) because HRS § 706–662 never existed, 2) no extended term of imprisonment could have been imposed at the time he committed the burglary in this case, and 3) therefore, Act 1 violates the *Ex Post Facto* Clause by making it possible to subject him to an extended term of imprisonment. We disagree.

The aspect of HRS § 706–662 that the Hawai'i Supreme Court found unconstitutional in *Maugaotega II* was the statute's procedural requirement that the sentencing court, rather than the trier of fact, make the necessity finding which was a predicate to imposing an extended term sentence. 115 Hawai'i at 446–47, 168 P.3d at 576–77. The supreme court did not hold that it was unconstitutional for an extended term of imprisonment to be imposed based on the substantive criteria set forth in the statute. For example, as part of a plea agreement, a defendant could have pleaded guilty and stipulated that he or she was a persistent offender whose commitment for an extended term of imprisonment was necessary for the protection of the public as to one count, in return for the dismissal of other counts. Nothing in the reasoning behind *Maugaotega II* would have rendered an extended term of imprisonment imposed by the sentencing court under HRS § 706–662 that was based on such a stipulation to be unconstitutional.

Under indistinguishable circumstances, the United States Supreme Court has rejected Cutsinger's argument and held that the invalidation of a statute on constitutional grounds does not extinguish the statute's existence for purposes of the *ex post facto* analysis. *Dobbert,* 432 U.S. at 297–98, 97 S.Ct. 2290. In *Dobbert,* the Supreme Court considered the retroactive application of amendments to Florida's death penalty statute which were made after the earlier statute was struck down as unconstitutional by Florida's highest court because of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). *Dobbert,* 432 U.S. at 288, 97 S.Ct. 2290. In *Furman,* the Supreme Court held that the death penalty statutes of Georgia and Texas were unconstitutional in violation of the Eighth and Fourteenth Amendments because of procedural defects that left the judge or jury with untrammeled discretion and created a substantial risk that the death penalty would be imposed in an arbitrary or capricious manner. *See Gregg v. Georgia,* 428 U.S. 153, 169 n. 15, 188–95, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The effect of *Furman* was to nullify the capital punishment laws of 39 States, including Florida. *Furman,* 408 U.S. at 417, 92 S.Ct. 2726 (Pow-

ell, J., dissenting); *Donaldson v. Sack*, 265 So.2d 499, 500–01 (Fla.1972). The basis for the Court's finding the death penalty statutes unconstitutional in *Furman* was much like the basis for the Hawai'i Supreme Court's determination in *Maugaotega II* that HRS § 706–662 was unconstitutional on its face: procedural defects in the statutes prevented the statutes from being applied constitutionally.

In *Dobbert*, the petitioner argued that the application to his case of certain post-*Furman* amendments to Florida's death penalty procedure constituted an *ex post facto* violation. *Dobbert*, 432 U.S. at 287, 292, 97 S.Ct. 2290. The statutory amendments changed the role of the judge and jury in imposing the death sentence and were enacted after petitioner committed the murder but before his trial. *Id.* The Court held that there was no *ex post facto* violation in applying the amendments to petitioner's trial. *Id.* at 292–301, 97 S.Ct. 2290. The Court specifically rejected the petitioner's *ex post facto* claim that was based on petitioner's contention that (like Cutsinger's claim) there was no death penalty statute "in effect" when he committed the murder because that statute had later been struck down as unconstitutional:

Petitioner's second ex post facto claim is based on the contention that at the time he murdered his children there was no death penalty "in effect" in Florida. This is so, he contends, because the earlier statute enacted by the legislature was, after the time he acted, found by the Supreme Court of Florida to be invalid under our decision in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Therefore, argues petitioner, there was no "valid" death penalty in effect in Florida as of the date of his actions. *But this sophistic argument mocks the substance of the Ex Post Facto Clause.* Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability which the State ascribed to the act of murder.

Petitioner's highly technical argument is at odds with the statement of this Court in *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940):

"The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. *Norton v. Shelby County*, 118 U.S. 425, 442, 6 S.Ct. 1121, 1125, 30 L.Ed. 178; *Chicago, I. & L. Ry. Co. v. Hackett*, 228 U.S. 559, 566, 33 S.Ct. 581, 584, 57 L.Ed. 966. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored."

*Here the existence of the statute served as an "operative fact" to warn the petitioner of the penalty which Florida would seek to impose on him if he were convicted of first-degree murder.* This was sufficient compliance with the ex post facto provision of the United States Constitution.

*Id.* at 297–98, 97 S.Ct. 2290 (emphases added).

Under *Dobbert*, the Hawai'i Supreme Court's determination in *Maugaotega II* that HRS § 706–662 was unconstitutional on its face did not extinguish the statute's existence. Thus, for *ex post facto* purposes, Cutsinger was subject to a ten-year extended term of imprisonment under HRS § 706–662 at the time he committed the instant burglary, the same punishment to which he is currently exposed under Act 1.

In circumstances that are virtually identical to Cutsinger's, the Washington Supreme Court held that the retroactive application of statutory amendments, which were enacted in response to *Blakely*, did not constitute an *ex post facto* violation. *State v. Pillatos*, 159 Wash.2d 459, 150 P.3d 1130 (2007) (en banc).

Washington's exceptional sentencing laws were found to be unconstitutional for the same reason that Hawai'i's extended term sentencing statutes were found unconstitutional: they required the sentencing court rather than a jury to make findings necessary to impose the enhanced sentence.[19] In *Pillatos,* the Washington Supreme Court rejected the argument that because the former exceptional sentencing statute was unconstitutional, the retroactive application of the amendments enacted to remedy the statutory defect violated the *ex post facto* clause. *Id.* at 1137–38. The court explained:

> A defendant is subject to the penalty in place the day the crime was committed. After the fact, the State may not increase the punishment. But ... the key is whether the defendant had *notice* of the punishment at the time of the crime, not whether in some metaphysical sense, a constitutional statute existed at the time of the crime.
>
> . . . .
>
> We note that the argument that an unconstitutional statute does not, in some sense, exist, and therefore cannot justify punishment before the legislature remedies the constitutional flaw, has been raised and rejected many times in many courts. *See, e.g., Dobbert v. Florida,* 432 U.S. 282, 289, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (rejecting claim that defendant was not properly subject to death penalty because only an unconstitutional version was in place at the time he committed his crime); *State v. Ring,* 204 Ariz. 534, 65 P.3d 915, 928 (2003) (same); *People v. District Court,* 834 P.2d 181 (Colo.1992) (same); *accord Collins v. Youngblood,* 497 U.S. 37, 49, 52, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (not an ex post facto violation to apply new statute that had the effect of allowing rescission of illegal portions of defendant's sentence even though without the statute he would have received a new trial); *Weaver [v. Graham],* 450 U.S. [24] at 28–29, 101 S.Ct. 960[, 67 L.Ed.2d 17 (1981) ] (purpose of ex post facto clause is

to assure that "legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed"). We find these cases compelling. *When a statute has been declared unconstitutional as applied to a certain set of procedures, it does not cease to exist for purposes of the ex post facto clauses.* It still exists, and still gives notice that certain conduct is illegal and carries certain consequences.

*Id.* at 1138 (emphases added; certain citations omitted). The court held that the retroactive application of the statutory amendments did not violate the *ex post facto* prohibition. *Id.*

### E.

The analysis undertaken by the Hawai'i Supreme Court in *Maugaotega II* demonstrates that the court's finding that HRS § 706–662 was unconstitutional on its face did not mean that the statute was never in existence. After concluding that HRS § 706–662 was unconstitutional on its face, the court went on to consider whether to exercise its inherent judicial power to authorize, upon remand, the empaneling of a jury to make the factual findings necessary to impose an extended term of imprisonment. *Maugaotega II,* 115 Hawai'i at 448, 168 P.3d at 578. There would be no point in considering whether to authorize the empaneling of a jury if HRS § 706–662 no longer existed because without HRS § 706–662, there would be no basis to impose an extended term of imprisonment. The court's analysis therefore establishes that by concluding HRS § 706–662 was unconstitutional on its face, the court did not intend to extinguish the existence of the statute or to preclude the retroactive application of remedial procedural amendments to the statute.

The court's decision to decline to exercise its inherent judicial power to authorize the empaneling of a sentencing jury in *Maugaotega II* was based on its interpretation of the Legislature's intent in enacting Act 230.

---

19. In *State v. Hughes,* 154 Wash.2d 118, 110 P.3d 192, 208 (2005), *overruled on other grounds by Washington v. Recuenco,* 548 U.S. 212, ——, 126 S.Ct. 2546, 2553, 165 L.Ed.2d 466 (2006), the Washington Supreme Court noted that the

sentencing statute invalidated by *Blakely* "explicitly directs the trial court to make the necessary factual findings [to impose an exceptional sentence] and does not include any provision allowing a jury to make those determinations...."

The court interpreted the Legislature's enactment of Act 230 as an expression of its intent on "how best to conform our extended term sentencing regime to the requirements of *Apprendi* and its progeny" and noted that the Legislature "did not vest in the jury the power to find the requisite aggravating facts but, rather, directed that the sentencing court should retain that responsibility." *Id.* at 449, 168 P.3d at 579. In light of the Legislature's expression of its intent in enacting Act 230, the court chose to exercise "self-restraint" and leave to the Legislature the task of conforming the extended term statutes to *Cunningham. Id.* at 447–51, 168 P.3d at 577–81.

The Legislature's enactment of Act 1, however, eliminates any doubt about the Legislature's intent with respect to extended term sentencing. The Legislature has plainly expressed its desire for a sentencing scheme in which extended terms of imprisonment may continue to be imposed. It has chosen to conform Hawai'i's extended term statutes to *Cunningham* by providing defendants with the right to have a jury determine, beyond a reasonable doubt, the facts necessary to impose an extended term. Act 1 thus provides clear evidence of the Legislature's intent that was not available to the court when it decided *Maugaotega II.* To the extent that court's analysis was based on its interpretation of the Legislature's intent, the enactment of Act 1 changes the landscape. *See Nakata,* 76 Hawai'i at 368–71, 878 P.2d at 707–10 (relying on subsequent enactments of the Legislature to modify the court's prior interpretation of the Legislature's intent); *see also State v. Brantley,* 99 Hawai'i 463, 473, 56 P.3d 1252, 1262 (2002) (Ramil, J., concurring) ("[S]ubsequent legislative history or amendments may be examined in order to confirm our interpretation of statutory provisions.") (internal quotation marks omitted).

### III.

■ Cutsinger argues that the State is precluded from seeking an extended term of imprisonment on remand because it failed to allege in Cutsinger's complaint the facts necessary to establish his eligibility for an ex-

tended term as a persistent offender. He contends that the State was required to allege such facts in the complaint to give him adequate notice of what the State would rely upon in seeking an extended term sentence. We disagree.

Act 1 provides:

Notice of intention to seek an extended term of imprisonment under section 706–662 shall be given to the defendant within thirty days of the defendant's arraignment. However, the thirty-day period may be waived by the defendant, modified by stipulation of the parties, or extended upon a showing of good cause by the prosecutor. *A defendant previously sentenced to an extended term under a prior version of this chapter shall be deemed to have received notice of an intention to seek an extended term of imprisonment.*

Act 1, § 4 (emphasis added).

Cutsinger was charged by a complaint filed on July 12, 2005. Cutsinger's complaint did not allege the facts necessary to establish Cutsinger's eligibility for an extended term of imprisonment as a persistent offender. Under settled Hawai'i law at the time Cutsinger's complaint was filed, the State was not required to allege such facts in the complaint in order to seek an extended term of imprisonment against Cutsinger. *State v. Kekuewa,* 114 Hawai'i 411, 421–22, 163 P.3d 1148, 1158–59 (2007) (citing *State v. Schroeder,* 76 Hawai'i 517, 528, 880 P.2d 192, 203 (1994)); *State v. Kaua,* 102 Hawai'i 1, 12–13, 72 P.3d 473, 484–85 (2003). The guilty plea form signed by Cutsinger notified him that he was subject to a ten-year extended term of imprisonment on the burglary count.[20] On May 4, 2006, prior to Cutsinger's original sentencing, the State filed a motion for an extended term of imprisonment that notified Cutsinger of the facts upon which it would rely in seeking an extended term against him as a persistent offender. Thus, when Cutsinger's resentencing hearing is held on remand, he will already have received ample notice of the basis upon which the State seeks to extend his sentence.

---

20. The transcript of Cutsinger's guilty-plea hearing was not included as part of the record on appeal. Thus, we do not know to what extent Cutsinger's exposure to an extended term of imprisonment was discussed at that hearing.

## A.

■ The majority of jurisdictions that have considered the issue have held that *Apprendi* and its progeny do not require that facts necessary to enhance a sentence be alleged in an indictment or a complaint. *E.g., State v. Chauvin*, 723 N.W.2d 20, 29–30 (Minn.2006); *McKaney v. Foreman*, 209 Ariz. 268, 100 P.3d 18, 20–23 (2004) (en banc); *Joubert v. State*, 235 S.W.3d 729, 732 (Tex. Crim.App.2007). The Fifth Amendment right to indictment by a grand jury, which applies to federal prosecutions, does not apply to state prosecutions. *Williams v. Haviland*, 467 F.3d 527, 531–35 (6th Cir.2006); *Evans v. State*, 389 Md. 456, 886 A.2d 562, 572–73 (2005).

In *Jones v. United States*, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), which involved a federal prosecution, the Supreme Court stated that "any fact (other than prior conviction) that increases the maximum penalty for a crime *must be charged in an indictment*, submitted to a jury, and proven beyond a reasonable doubt." (Emphasis added.) However, *Apprendi*, *Blakely*, and *Cunningham*, which involved state prosecutions, drop any reference to the need to charge a sentencing-enhancing fact in the indictment. In *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348, the Court stated its holding as: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Similarly, in *Cunningham*, 549 U.S. at ——, 127 S.Ct. at 863–64, the Court summarized the principles established by *Apprendi* and its progeny, as follows:

This Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.

Although *Apprendi* and its progeny require that sentencing-enhancing facts be treated as the functional equivalent of elements of an offense for purposes of the Sixth Amendment jury-trial right, most courts have held that such facts are not elements for purposes of what must be pled in an indictment or complaint. *Joubert*, 235 S.W.3d at 732 ("Most courts, including this one, have held that the *Apprendi* sentencing factors are not elements of offenses for purposes other than the Sixth Amendment jury-trial guarantee."); *State v. Berry*, 141 S.W.3d 549, 562 (Tenn.2004) ("Despite the language in *Apprendi* and *Ring* referring to aggravating circumstances as 'the functional equivalent of an element of a greater offense,' . . . for purposes of pleading, we view aggravating circumstances as more similar to sentencing enhancements.").

In *Chauvin*, 723 N.W.2d at 29–30, the Minnesota Supreme Court rejected the defendant's claim that his sentence could not be enhanced because the aggravating factor (victim vulnerability) used to enhance his sentence did not appear in his complaint. Chauvin argued that because the Supreme Court in *Apprendi* compared an aggravating factor to an element of a greater offense, all aggravating facts used to enhance a sentence must be alleged in the complaint. *Id.* at 29. The Minnesota Supreme Court held:

Chauvin's reliance on *Apprendi*'s "elements" language is misplaced. The Supreme Court in *Apprendi* made the comparison of aggravating sentencing factors to elements in the context of the adequacy of proof to satisfy the Sixth Amendment's jury trial requirement, not in the context of giving adequate notice of the charges presented to satisfy the Sixth and Fourteenth Amendments' more relaxed due process and notice requirements. *See Apprendi*, 530 U.S. at 494 & n. 19, 120 S.Ct. 2348, 147 L.Ed.2d 435. We hold that the aggravating factor of victim vulnerability need not be alleged in the complaint.

*Id.* at 30.

We agree with the reasoning of the majority of courts from other jurisdictions and conclude that *Apprendi* and its progeny do not require that sentencing-enhancing facts be alleged in an indictment or a complaint in a state prosecution.

## B.

In *Maugaotega II*, 115 Hawai'i at 449 n. 19, 168 P.3d at 579 n. 19, the Hawai'i Su-

preme Court declined to decide the issue of whether extrinsic facts, including those pertinent to the necessity finding, must be alleged in an indictment or complaint in order to impose an extended term of imprisonment.[21] Without deciding the issue, the court commented in footnote 19 as follows:

This court has already articulated the manner in which a trial would be conducted in connection with a motion for an extended term sentence based upon facts intrinsic to the offense charged. *See State v. Janto*, 92 Hawai'i 19, 34–35, 986 P.2d 306, 321–22 (1999) (addressing the prosecution's motion for an enhanced sentence pursuant to HRS § 706–657 (1993) for murder "especially heinous and cruel"). *Cunningham*, however, by rejecting the intrinsic/extrinsic distinction, *see* 549 U.S. at —— n. 14, 127 S.Ct. at 869 n. 14, essentially reinstates the rule asserted in *Estrada* for both intrinsic *and extrinsic* facts: "a defendant [must] have 'fair notice of the charges against' him: the aggravating circumstances must be alleged in the indictment and found by the jury," *[State v.] Estrada*, 69 Haw. 204] at 229, 738 P.2d [812] at 829 [ (1987) ] (quoting *State v. Apao*, 59 Haw. 625, 635–36, 586 P.2d 250, 258 (1978)). "[S]uch aggravating circumstances '*must* be alleged in the indictment in order to give the defendant notice that they will be relied on to prove the defendant's guilt and *support the sentence to be imposed* . . . .' " *[State v.] Tafoya*, 91 Hawai'i 261] at 270, 982 P.2d [890] at 899 [ (1999) ] (quoting *[State v. Schroeder,] Schroeder II*, 76 Hawai'i 51] at 528, 880 P.2d [192] at 203 [ (1994) ] (discussing intrinsic aggravating factors) (some emphasis in *Schroeder II* and some added)). It is therefore noteworthy that the indictments against Maugaotega did not allege that, if convicted, he would be subject to extended term sentencing nor allege the facts upon which the prosecution would base its mo-

tions for extended terms. *See supra* note 3.

Without deciding the issue, we foresee that, in a reformed extended term sentencing scheme in which the jury is vested with the responsibility of making the requisite findings, notice of the prosecution's intention to seek an extended sentence and the facts requisite to that extended sentence— but irrelevant and potentially prejudicial to the defendant during the guilt phase of the trial—would be included in the indictment but withheld from the jury until the second phase of the trial, during which the motion for extended term sentencing would be considered. In that manner, both the defendant's due process right to notice of the potential sentence to be imposed *and* the right to a fair trial on the charged offense before an impartial jury would be preserved. *But see State v. Chauvin*, 723 N.W.2d 20, 29–30 (Minn.2006) (defendant's *Apprendi* rights and right to due process were not violated by the prosecution's failure to include aggravating circumstances in the complaint, particularly in light of the fact that, three weeks prior to trial, the prosecution provided the defendant separate notice of its intention to seek an extended term sentence and notice of the facts upon which it would rely in seeking the sentence).

*Id.*

We conclude that the prior Hawai'i cases holding that intrinsic aggravating circumstances must be alleged in the indictment are distinguishable and do not prevent the State from seeking an extended term of imprisonment against Cutsinger on remand. The aggravating circumstances upon which the State seeks to impose an extended term on Cutsinger—to show that he is a persistent offender whose imprisonment for an extended term is necessary for protection of the public—are extrinsic aggravating circum-

21. Prior to *Maugaotega II*, the Hawai'i Supreme Court did not view the necessity finding as a finding of "fact" that was required to made by a jury in order to impose an extended term of imprisonment. *Maugaotega II*, 115 Hawai'i at 437–46, 168 P.3d at 567–76. Rather, the court regarded the necessity finding as part of the sentencing judge's traditional exercise of sen-

tencing discretion and therefore as a determination the judge could make without implicating or violating *Apprendi, Blakely,* or *Booker. Id.* Accordingly, the court has not specifically considered or determined whether the facts pertinent to the necessity finding must be alleged in the charging documents in order to impose an extended term.

stances. *See Kaua*, 102 Hawai'i at 8–13, 72 P.3d at 480–85; *State v. Tafoya*, 91 Hawai'i 261, 270–71, 982 P.2d 890, 899–900 (1999).

The reason the supreme court *required* that intrinsic aggravating circumstances be alleged in the indictment is because such circumstances are "contemporaneous with, and enmeshed in, the statutory elements of the proscribed offense," *Tafoya*, 91 Hawai'i at 271, 982 P.2d at 900, and thus are *"intrinsic* to the commission of the crime charged." *Id.* at 270, 982 P.2d at 899 (internal quotation marks omitted). The court viewed intrinsic aggravating circumstances as part of the charged offense which the State would have to prove at the trial on the defendant's guilt of the charged offense. It thus made sense to treat the intrinsic aggravating circumstances as an element of the offense for charging purposes and require that they be alleged in the indictment to ensure that the defendant received adequate notice of these circumstances and could prepare to defend against them at the trial. *See id.* (holding that intrinsic aggravating circumstances *"must* be alleged in the indictment in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to be imposed ....").

However, adequate notice of extrinsic aggravating circumstances can be provided without those circumstances being alleged in the indictment or complaint. In Cutsinger's case, it is clear that notice to him of the facts the State will rely upon in seeking an extended sentence on remand has been more than adequate. Prior to his initial sentencing, the State disclosed the basis upon which it sought to enhance his sentence as a persistent offender. By the time this case is remanded for resentencing, Cutsinger will have had more than eighteen months' notice of the facts the State will rely upon in seeking an extended sentence and thus ample time to prepare his defense.

The distinction between intrinsic and extrinsic aggravating circumstances was critical to the court's determination that intrinsic aggravating circumstances must be alleged in the indictment. *Id.* at 270–75, 982 P.2d at 899–904. Because intrinsic aggravating circumstances are contemporaneous with and enmeshed in the charged crime, they are relevant to proving the charged offense and would naturally be offered by the prosecution as evidence of the defendant's guilt. Thus, no undue prejudice to a defendant would result if intrinsic aggravating circumstances were alleged in the indictment or if evidence relating to such circumstances were presented to a grand jury or a jury adjudicating the defendant's guilt at trial.

Extrinsic aggravating circumstances, however, involve historical facts that are extraneous to and separable from the offense itself and "therefore have no bearing on the issue of guilt *per se." Id.* 270–71, 982 P.2d at 899–900. Substantial prejudice to a defendant would likely result if extrinsic aggravating circumstances (especially those typically related to the necessity finding) were required to be alleged in the indictment or if evidence of extrinsic aggravating circumstances were revealed to a grand jury or a jury adjudicating the defendant's guilt on the charged offense. In Cutsinger' case, for example, the extrinsic aggravating circumstances supporting the allegation that he is "a persistent offender whose imprisonment for an extended term is necessary for the protection of the public" include numerous prior convictions for second degree burglary—the same crime with which he was charged in this case. Accordingly, requiring extrinsic aggravating circumstances to be alleged in an indictment would raise significant concerns.

In addition, in setting forth the requirement that intrinsic aggravating circumstances be charged in the indictment, the Hawai'i Supreme Court clearly contemplated that only one jury trial would be held; it did not contemplate bifurcated jury trials to determine whether the defendant is guilty of the charged offense and whether the defendant qualifies for an extended sentence. Indeed, as expressed in *Tafoya*, part of the court's reasoning for establishing different rules for intrinsic and extrinsic aggravating circumstances was concern that exposing the jury (adjudicating the defendant's guilt) to extrinsic aggravating circumstances would prejudice the defendant's right to a fair trial on the charged offense. *Id.,* at 271, 274, 982 P.2d at 900, 903. Act 1, however, provides for separate jury trials to determine the defendant's guilt on the charged offense and

the defendant's eligibility for an extended term sentence: "The court shall not impose an extended term unless the ground therefor has been established at a hearing *after the conviction of the defendant* and written notice of the ground proposed was given to the defendant pursuant to subsection (2)." Act 1, § 4 (emphasis added). This feature of Act 1 furnishes another basis for distinguishing the supreme court's prior decisions regarding intrinsic aggravating circumstances.

## CONCLUSION

We conclude that Act 1's retroactivity provision does not violate the *Ex Post Facto* Clause. We further conclude: 1) that the State's failure to allege in Cutsinger's complaint the facts necessary to establish Cutsinger's eligibility for an extended term as a persistent offender does not prevent the State from seeking an extended term on remand and 2) that Cutsinger has received adequate notice of the State's basis for seeking an extended term. Accordingly, we hold that Act 1 may be applied retroactively to Cutsinger's resentencing, and we remand the case for resentencing in accordance with Act 1.

We vacate the extended term sentence imposed on Cutsinger's conviction for second degree burglary (Count 1), and we remand the case for further proceedings consistent with this opinion.

