LARRY LEE KILLION, JR., Petitioner-Appellant,
v.
STATE OF HAWAl'l, Respondent-Appellee.
No. 29077
Intermediate Court of Appeals of Hawaii.
February 24, 2009.
On the briefs:
Larry Lee Killion, Jr. A0729793-LA66, Saguaro Correctional Facility, Eloy, AZ, Petitioner-Appellant Pro Se.
Richard K. Minatoya, Deputy Prosecuting Attorney, County of Maui, Wailuku, Maui, Hawai'i, for Respondent-Appellee State of Hawai'i.
Mark J. Bennett, Attorney General, State of Hawai'i Lisa M. Itomura Diane K. Taira Deputy Attorneys General Honolulu, Hawai'i, for Respondent-Appellee State of Hawai'i, Department of the Attorney General

MEMORANDUM OPINION
FOLEY, Presiding Judge, NAKAMURA and LEONARD, JJ.
Petitioner-Appellant Larry L. Killion, Jr. (Killion) appeals pro se from the Findings of Fact, Conclusions of Law, and Judgment Denying Rule 40 Petition for Post-Conviction Relief, filed on March 5, 2008 (Order Denying Rule 40 Petition), in the Circuit Court of the Second Circuit (Circuit Court)[1]
Killion identifies as points of error the following four Conclusions of Law entered by the Circuit Circuit:
1. "[Killion's] Constitutional Claims Do Not Relate To Illegal Custody or Restraint, Therefore, Such Claims Are Dismissed";
2. "[State v.] Tauiliili Does Apply to Petitioner and Petitioner Received All Credit Due";
3. "The [Hawaii Paroling Authority] and [Department of Public Safety] Did Not Violate The Ex Post Facto Clause When [Killion's] Minimum Terms And Sentences Were Corrected"; and
4. "[Killion] Has No Right To, Or Liberty Interest In, Parole and [Hawaii Paroling Authority] and [Department of Public Safety] Did Not Violate [Killion's] Right To Due Process."
In short, Killion argues that: (1) the Hawai'i Supreme Court's decision in State v. Tauiliili, 96 Hawai'i 195, 29 P.3d 914 (2001) (Tauiliili), cannot be applied retroactively to his minimum sentences because the Circuit Court ordered that he be given presentence credit to all minimum terms, including each of his consecutive terms; (2) the Hawaii Paroling Authority (HPA) created regulations, policies, rules, directives, and/or memoranda to address how to apply Tauiliili retrospectively which violates due process and the ex post facto clause of the United States Constitution; and (3) Killion was entitled to an evidentiary hearing to "provide a detailed picture how, and under what circumstances the State "recalculated" or "corrected" presentence credits and release dates." For the reasons set forth below, we reject these contentions. We conclude that the Hawaii Supreme Court's decision in Tauiliili can be applied to Killion's sentences.

I. RELEVANT FACTS
On November 1, 1990, after Killion pled no contest, the Circuit Court convicted Killion of three counts of Sexual Abuse in the First Degree, in violation of Hawaii Revised Statutes (HRS) § 707-736 (1985) (Counts 1, 31, and 92), two counts of Sodomy in the Second Degree, in violation of HRS § 707-734 (1985) (Counts 2 and 32), three counts of Rape in the Second Degree, in violation of HRS § 707-731 (1985) (Counts 3, 33, and 93), nine counts of Sexual Assault in the Third Degree, in violation of HRS § 707-732 (1986) (Counts 58, 88, 100, 131, 149, 164, 167, 171, and 174), three counts of Sexual Assault in the Second Degree, in violation of HRS § 707-731 (1986) (Counts 176, 184, and 191), twelve counts of Sexual Assault in the First Degree, in violation of HRS § 707-730 (1986) (Counts 59, 60, 89, 90, 101, 128, 132, 133, 150, 151, 165, and 166), and three counts of Promoting Child Abuse in the First Degree, in violation of HRS § 707-750 (1985) (Counts 91, 129, and 192).
At the time Killion committed the crimes, Sexual Assault was a Class A felony subject to an indeterminate twenty-year term of imprisonment. HRS § 706-659 (1985). Sodomy in the Second Degree, Rape in the Second Degree, Sexual Assault in the Second Degree, and Promoting Child Abuse in the First Degree were Class B felonies subject to indeterminate ten-year terms of imprisonment. HRS § 706-660 (1985). Sexual Assault in the Third Degree and Sexual Abuse in the First Degree were Class C felonies subject to indeterminate five-year terms of imprisonment. HRS § 706-660.
On November 1, 1990, the Circuit Court entered an Amended Judgment which stated:
FINAL JUDGMENT AND SENTENCE OF THE COURT:
DEFENDANT COMMITTED TO THE CUSTODY OF THE DEPARTMENT OF PUBLIC SAFETY FOR A MAXIMUM TERM OF IMPRISONMENT OF FORTY (40) YEARS. MITTIMUS TO ISSUE FORTHWITH WITH CREDIT FOR TIME SERVED. COUNTS 60, 89, 90, 101, 128, 132, 133, 150, 151, 165, 166 TO RUN CONCURRENT BUT CONSECUTIVE TO COUNT 59.
DEFENDANT COMMITTED TO THE CUSTODY OF THE DEPARTMENT OF PUBLIC SAFETY FOR A MAXIMUM TERM OF IMPRISONMENT OF TEN (10) YEARS. MITTIMUS TO ISSUE FORTHWITH WITH CREDIT FOR TIME SERVED. TERMS TO RUN CONCURRENT FOR COUNTS 2, 32, 3, 33, 93, 176, 184, 191, 91, 129, 192.
DEFENDANT COMMITTED TO THE CUSTODY OF THE DEPARTMENT OF PUBLIC SAFETY FOR A MAXIMUM TERM OF IMPRISONMENT FOR FIVE (5) YEARS. MITTIMUS TO ISSUE FORTHWITH WITH CREDIT FOR TIME SERVED. TERMS TO RUN CONCURRENT FOR COUNTS 58, 88, 100, 171, 131, 149, 164, 167, 174, 1, 31, 92.
Also on November 1, 1990, the Circuit Court issued an Amended Mittimus, with an effective date of October 26, 1990. Accordingly, Killion's maximum sentence was to end on October 25, 2030 (two consecutive twenty year sentences), before application of any presentence credit.
As of October 15, 1990, Killion's presentence credit was 620 days. On April 15, 1993, Killion received a Notice and Order Fixing Minimum Term(s) of Imprisonment (1993 Notice). The minimum terms were twelve years for Killion's Class A felony convictions, six years for Killion's Class B felony convictions, and three years for Killion's Class C felony convictions. Killion's minimum term for Count 59, a Class A felony, would have expired on October 25, 2002 without any presentence credit. After applying another twelve year consecutive term for his other Class A felony convictions, Killion's minimum term would expire on October 25, 2014 without any presentence credit.
According to the 1993 Notice, after application of his presentence credit, Killion's minimum term for Count 59 was set to expire on January 27, 2001. The 1993 Notice also stated that his consecutive twelve year terms were to expire on May 1, 2011. It appears that HPA applied the presentence credit to each of Killion's consecutive twelve year sentences, otherwise his consecutive sentence would have ended on January 27, 2013.
On August 11, 2006, Killion received another Notice and Order Fixing Minimum Term(s) of Imprisonment (2006 Notice). The 2006 Notice stated: "CORRECTED pursuant to Supreme Court decision re: State v. Tauiliili giving credit once against aggregate of the consecutive sentence." The 2006 Notice specified that Killion's consecutive minimum sentence was corrected and would expire on January 24, 2013.[2]
On October 16, 2007, Killion filed a Petition for Post-Conviction Relief pursuant to Hawaii Rules of Penal Procedure (HRPP) Rule 40 (Rule 40 Petition) against HPA. Killion sought an order requiring HPA "to assign back the Petitioner's credits for time served as originally ordered by the Court and confirmed and set by the Hawaii Paroling Authority in the [sic] fixing of his consecutive sentences in 1991. These credits were illegally taken away from the Petitioner's consecutive sentence and his minimum and maximum term altered by the DPS/HPA in 2006." Killion claimed that HPA violated the ex post facto clause of the United States Constitution, the equal protection clause of the Fourteenth Amendment to the United States Constitution, the due process clause of the Fourteenth Amendment to the United States Constitution, Article i, Section 5 of the Hawai'i Constitution, and the Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishment.
On March 5, 2008, the Circuit Court issued its Findings of Fact, Conclusions of law, and Judgment Denying Rule 40 Petition for Post-Conviction Relief. The Circuit Court denied the Rule 40 Petition without a hearing and Killion timely filed this appeal.

II. APPLICABLE STANDARDS OF REVIEW
Regarding the denial of a Hawai'i Rules of Penal Procedure (HRPP) Rule 40 petition without an evidentiary hearing, HRPP Rule 40(f) provides in relevant part:
(f) Hearings. If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner. The court may also deny a hearing on a specific question of fact when a full and fair evidentiary hearing upon that question was held during the course of the proceedings which led to the judgment or custody which is the subject of the petition or at any later proceeding.
In Barnett v. State, 91 Hawai'i 20, 979 P.2d 1046 (1999), the Hawai'i Supreme Court stated:
As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim. To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the verdict, however, a petitioner's conclusions need not be regarded as true. Where examination of the record of the trial court proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing. The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.

State v. Allen, 7 Haw. App. 89, 92-93, 744 P.2d 789, 792-93 (1987) (emphasis added).
In this regard, the appellate court steps into the trial court's position, reviews the same trial record, and redecides the issue. Because the appellate court's determination of "whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court" is a question of law, the trial court's decision is reviewed de novo. See United States v. Burrows, 872 F.2d 915 (9th Cir. 1989) (denial of a post-conviction motion based on ineffective assistance of counsel without conducting an evidentiary hearing is reviewed de novo for a determination of whether the files and records of the case conclusively show that petitioner is entitled to no relief). Therefore, we hold that the issue whether the trial court erred in denying a Rule 40 petition without a hearing based on no showing of a colorable claim is reviewed de novo; thus, the right/wrong standard of review is applicable.
Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994). Barnett, 91 Hawai'i at 26, 979 P. 2d at 1052 (brackets and ellipsis omitted; emphasis in original).

III. DISCUSSION

A. Killion's Claim Was Properly Brought as a HRPP Rule 40 Petition
As argued by Killion, the Circuit Court erred by concluding that "Petitioners Constitutional Claims Do Not Relate To Illegal Custody or Restraint, Therefore, Such Claims Are Dismissed." Minimum term sentencing issues are properly raised in a HRPP Rule 40 petition. See Williamson v. Hawai'i Paroling Authority, 97 Hawai'i 183, 35 P.3d 210 (2001) (petition to challenge Hawaii Paroling Authority setting of minimum terms to be processed as HRPP Rule 40 Petition, not a civil action). The State provides no argument as to why Killion's claims are civil in nature and cannot be addressed by a HRPP Rule 40 petition. If the Circuit Court perceived Killion's claims to be "claims under a civil rights statute or other separate cause of action," the Circuit Court should have disposed of those claims under the civil rules, not hold that the claims are dismissed. HRPP Rule 40(c)(3). The Circuit Court's error in ruling that Killion's petition was not supported by HRPP Rule 40 is, however, harmless because the court nevertheless addressed the merits of Killion's claims.

B. State v. Tauiliili Should Be Applied To Killion
In Tauiliili, the supreme court held that presentence credit pursuant to HRS § 706-671[3] could only be applied once to the aggregate maximum and minimum consecutive sentences. Tauiliili, 96 Hawai'i at 200, 29 P.3d at 919. The court explained that the purpose of HRS § 706-671 was to "ensure equal treatment of all defendants whether or not they are incarcerated prior to conviction." Tauiliili, 96 Hawai'i at 199, 29 P.3d at 918. "Once credit has been granted, no additional purpose is served by granting a second or "double credit" against a later consecutive sentence." Id.
"Although judicial decisions are assumed to apply retroactively, such application is not automatic." State v. Ikezawa, 75 Haw. 210, 220, 857 P.2d 593, 597 (1993). The court must exercise its discretion by weighing the merits and demerits of retroactive application. Id. at 220, 857 P.2d at 598.
[F]actors to be considered in determining whether to apply a decision retroactively include: (1) prior history of the rule in question, its purpose and effect, and whether retroactive operation will further or retard its operation; and (2) interests in the administration of justice and the integrity of the judicial process. We emphasized that implicit in these factors is the concept of fairness, stating that where substantial prejudice results from the retrospective application of new legal principles to a given set of facts, the inequity may be avoided by giving the guiding principles prospective application only.
State v. Okuno, 81 Hawai'i 226, 229, 915 P.2d 700, 703 (1996) (internal citations, quotation marks, and brackets omitted). The United States Supreme Court has observed that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 (1994). Furthermore, "when [a] Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." Id. at 313 n.12. Thus, the concept of a "retroactive application" in this context may be something of a misnomer.
In any case, in light of these authorities, we hold that Tauiliili should be applied to Killion. First, we note that HPA's administrative rule in effect at the time that Killion's sentence was imposed effectively stated that presentence credit may only be applied once. Hawaii Administrative Rule § XX-XXXX-XX[4] stated:
§ 17-1204-17 Credit application towards minimum sentence expiration date for sentenced felons.
(a) Presentence credit accumulated by a sentenced felon offender shall be deducted from the offender's minimum sentence expiration date set by the paroling authority.
(b) Upon the establishment of an adjusted minimum sentence expiration date, the paroling authority shall forward a facsimile copy of the expiration date to the corrections division office having custodial jurisdiction over the offender and the agency.
(c) The expiration date shall be the earliest date when the sentenced felon offender can be released from a correctional facility prior to and upon further action by the paroling authority.
Killion's argument that he should receive presentence credit for each minimum term was not supported by the plain meaning of HAR § 17-1204-17. Thus, application of Tauiliili to Killion is not inconsistent with the purpose and effect of presentence credits. Nor is it unfair or inequitable to apply the Tauiliili decision to Killion in harmony with the HPA rules in effect at the time of his sentencing.
In addition, consistent application of Tauiliili will further the purpose of HRS § 706-671 because all defendants will be treated equally when they receive presentence credit only once for consecutive sentences. In addition, HRS § 706-600 (1993) "expressly precludes the imposition of any sentence not authorized by chapter 706." State v. March, 94 Hawai'i 250, 254, 11 P.3d 1094, 1098 (2000) (brackets omitted). Thus, any sentence that applies a presentence credit twice, in contravention of HRS § 706-671, is expressly prohibited because it is not authorized.[5] The interests in the administration of justice and the integrity of the judicial process are best served by the consistent application of Tauiliili, which will disallow the imposition of prohibited sentences and foster equal treatment for convicted defendants.

C. Application of Tauiliili Does Not Violate The Ex Post Facto Clause
Killion claims that "retroactive application" of Tauiliili is prohibited by the ex post facto clause of the United States Constitution.[6] "Retroactive application of a law that imposes a greater punishment than the law in effect when the crime was committed is forbidden by the Ex Post Facto clauses of the Constitution." See, e.g., Davis v. Moore, 772 A.2d 204, 215-16 (D.C. 2001). "The United States Supreme Court has made it clear that the constitutional prohibition against ex post facto measures applies only to legislative enactments." State v. Jess, 117 Hawai'i 381, 407, 184 P.3d 133, 159 (2008). HRS § 706-671 was first enacted in 1972 by Act 9, section 1, and remains the same to this day. Tauiliili expressed an interpretation of HRS § 706-671 and did not change its statutory language or any prior ruling on its effect. Since HRS § 706-671 has not changed since Killion committed his offense, there is no ex post facto prohibition against applying Tauiliili retroactively. Therefore, the Circuit Court correctly concluded that HPA did not violate the ex post facto clause when it applied Tauiliili to correct Killion's sentence.

D. Application of Tauiliili to Killion Does Not Violate Due Process under the United States Constitution or Hawai'i Constitution
Killion also claims that retroactive application of Tauiliili violates due process under the United States and Hawai'i Constitutions. "[L]imitations on ex post facto judicial decisionmaking are inherent in the notion of due process." Jess, 117 Hawai'i at 407, 184 P.3d at 159. The test for analyzing whether a newly announced judicial doctrine can apply retroactively is grounded in concepts of notice and foreseeability. Id. at 408, 184 P.3d at 160 (citing Rogers v. Tennessee, 532 U.S. 451, 459 (2001) (citing Bouie v. City of Columbia, 378 U.S. 347, 351, 352, 354-55 (1697))). "[J]udicial reformation of the law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." Jess, 117 Hawai'i at 408, 184 P.3d at 160 (internal quotation marks and citation omitted). "An unforseeable interpretation of a statute that increases punishment, if applied retroactively, could violate due process." Campbell v. United States Parole Comm'n, 563 F. Supp.2d 23, 26 (D.D.C. 2008) (citing Bouie v. City of Columbia, 378 U.S. 347, 353-54, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)).
Under a Hawai'i due process analysis, whether application of a judicial decision is unexpected and indefensible, the court focuses on (1) whether the change wrought by the judicial decision is detrimental or remedial to the defendant's interest and (2) whether the change is substantive or procedural in nature. Jess, 117 Hawai'i at 408, 184 P.3d at 160.
As discussed in Section III.B. above, the supreme court's interpretation of HRS § 706-671 in Tauiliili was not unexpected at the time Killion was sentenced. Under HPA's administrative rules, presentence credit could only be applied once. Killion was sentenced to minimum terms of three years for all Class C felony convictions, six years for all Class B felony convictions, and twelve years for all Class A felony convictions. All three-year minimum terms, all six-year minimum terms, and one (1) twelve-year minimum term were to be served concurrently. All other twelve-year minimum terms were to be served consecutively to the three, six, and first twelve year minimum sentences. Killion's admission date was October 26, 1990. Thus, Killion must serve his longest concurrent minimum sentence (twelve years) followed by another twelve-year consecutive minimum sentence. Killion's minimum sentence expiration date is the earliest date when he can be released, which is twenty-four (24) years after his admission date. In accordance with HAR § 17-1204-17, Killion's presentence credit should be applied to his twenty-four year minimum term, not to each minimum term.
Hawaii Administrative Rule § 17-1204-17 was enacted in 1985. In 2001, when the court in Tauiliili stated that presentence credit could only be applied once to consecutive sentences, it was not unexpected that HRS § 706-671 would be interpreted to mean that presentence credit could only be applied once to the aggregate minimum sentence. The holding in Tauiliili was not a reformation or departure from an existing HPA rule. Rather, it was consistent with HPA's longstanding practice of only applying presentence credit once to a minimum sentence expiration date. Also, HPA's application of Tauiliili to Killion is procedural in nature since it is to correct its prior misapplication of presentence credit in order to conform to the law as it existed prior to and after Tauiliili. Thus, Killion's due process rights under the Hawai'i Constitution are not violated by the application of Tauiliili in this case.
Finally, application of Tauiliili does not violate Killion's due process rights under the United States Constitution. See, e.g., United States Parole Comm'n v. Noble, 693 A.2d 1084 (D.C. 1997) ((Noble), and Davis v. Moore, 772 A.2d 204 (D.C. 2001) (Davis). In Noble, the District of Columbia Court of Appeals held that a defendant under the supervision of the United States Parole Commission was not entitled to street time credit after his parole was revoked based upon its statutory interpretation of the Good Time Credits Act of 1986 (GTCA). Noble, 693 A.2d at 1086-94. In Davis, the court stated that its decision in Noble applied retroactively. 772 A.2d at 208-09.
Prior to Noble, the District of Columbia Department of Corrections[7] gave street time credit after parole was revoked based upon its interpretation of the GTCA. Id. at 209. The United States Parole Commission disagreed with the District of Columbia Department of Corrections and did not give street time credit after parole was revoked. Id. at 209-10. Thus, prisoners were subjected to disparate treatment depending on the facility in which they were located and a legal challenge ensued resulting in Noble. Id. at 210. After Noble, District of Columbia Department of Corrections denied street time credit after parole was revoked and recalculated sentences based on Noble to all prisoners still in custody. Id. at 208.
The appellants in Davis then filed suit claiming that Noble should not be retroactively applied to them because they were in a facility located within the District of Columbia, it violated due process and ex post facto clauses of the United States Constitution, and they reasonably relied upon the District of Columbia Department of Corrections' policy to award street time credit after parole revocation. Id. at 214. The Davis court held, inter alia, that the appellants' due process rights under the United States Constitution were not violated by retroactive application of Noble because the court's statutory interpretation in Noble was not unforeseeable and equitable considerations did not justify only prospective application. Id. In addition, the Davis court held "it is a well established rule that a prisoner has no constitutional right to object to the correction of a miscalculation of his sentence." Id. at 219 (citation omitted). "Only in rare circumstances have courts allowed the misconstruction of officials to estop the proper execution of state or federal law, and such cases have involved prejudice and harm beyond frustrated expectations." Id.[8] We find the reasoning in Davis persuasive and apply it here.
As previously stated, the court's decision in Tauiliili was not unforseeable. Killion could not have relied upon any erroneous interpretation by HPA. Killion had notice that, under HAR § 17-1204-17, presentence credit could only be applied once to consecutive sentences. Therefore, Killion's due process rights under the United States Constitution were not violated. As Killion was still incarcerated at the time his sentence was recalculated, we need not address whether a person who is erroneously paroled due to double presentence credit may benefit from a such mistake.

E. Killion's Claim that HPA Has Created Regulations, Etc. to Apply Tauiliili on Violation of the Ex Post Facto Clause Is Without Merit
Killion's claim that HPA created (unidentified) new regulations, policies, rules, directives, and/or memoranda for recalculating credit for time served to address Tauiliili is without merit. No regulations, policies, rules, directives, and/or memoranda for recalculating presentence credit for time served to address Tauiliili are required because HPA must apply HRS § 706-671 in accordance with the law.

F. Killion Was Not Entitled To An Evidentiary Hearing
Killion's claim that he was entitled to an evidentiary hearing to "provide the court with a detailed picture how, and under what circumstances the State "recalculates" or "corrects" presentence credits and release dates," is without merit. HPA corrected Killionf's sentence to comply with HRS § 706-671, as it was required to do by Tauiliili. HPA must apply HRS § 706-671 the same way in all cases, the manner specified in Tauiliili. As the Rule 40 Petition did not establish a colorable claim for relief, no hearing was required. See, e.g., Harriett, 91 Hawai'i at 26, 979 P.2d at 1052.

IV. CONCLUSION
For these reasons, the Circuit Court's Order Denying Rule 40 Petition is affirmed.
NOTES
[1] The Honorable Shackley F. Raffetto presided.
[2] It appears the expiration dates of the maximum and minimum sentences are reduced by one day for incarceration during leap years.
[3] HRS § 706-671 states:

§706-671 Credit for time of detention prior to sentence; credit for imprisonment under earlier sentence for same crime. (1) When a defendant who is sentenced to imprisonment has previously been detained in any State or local correctional or other institution following the defendant's arrest for the crime for which sentence is imposed, such period of detention following the defendant's arrest shall be deducted from the minimum and maximum terms of such sentence. The officer having custody of the defendant shall furnish a certificate to the court at the time of sentence, showing the length of such detention of the defendant prior to sentence in any State or local correctional or other institution, and the certificate shall be annexed to the official records of the defendant's commitment.
(2) When a judgment of conviction or a sentence is vacated and a new sentence is thereafter imposed upon the defendant for the same crime, the period of detention and imprisonment theretofore served shall be deducted from the minimum and maximum terms of the new sentence. The officer having custody of the defendant shall furnish a certificate to the court at the time of sentence, showing the period of imprisonment served under the original sentence, and the certificate shall be annexed to the official records of the defendant's new commitment.
[4] HAR § 17-1204-17 was repealed on April 15, 2000.
[5] Killion points out that the Amended Judgment states "Mittimus to issue forthwith with credit for time served," in each of the three paragraphs stating his sentences for Class A, B, and C felonies. Thus, Killion argues, the circuit court ordered that he be given presentence credit for each minimum term. However, Killion's interpretation of the Amended Judgment would be contrary to HRS § 706-671 and forbidden by HRS § 706-600. We reject that reading of the Amended Judgment.
[6] There is no ex post facto clause in the Hawai'i Constitution. State v. Cut singer, 118 Hawai'i 68, 75, 185 P.3d 816, 823 (App. 2008), overruled on other grounds by State v. Jess, 117 Hawai'i 381, 184 P.3d 133 (2008). Therefore the question of whether retroactive application of Tauiliili violates the ex. post facto clause is strictly a matter of federal constitutional law. Cutsinger, 118 Hawai'i at 75, 185 P.3d at 823.
[7] The District of Columbia Department of Corrections supervises prisoners in correctional facilities within the District of Columbia. Davis, 772 A.2d at 210. The United States Parole Commission supervises prisoners located in all other federal correctional facilities. Id.
[8] In Davis, the court noted that due process might be violated if a prisoner was already released on parole due to an erroneous sentence calculation, however, the appellants in that case were still incarcerated and, thus, the court did not reach that issue. Davis, 772 A.2d at 220.